UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THE DUWAMISH TRIBE; and CECILE HANSEN, in her capacity as the Chairwoman of the Duwamish Tribe Council of the Duwamish Tribe,<br><br>Plaintiffs,<br><br>v.<br><br>DEB HAALAND, in her official capacity as U.S. Secretary of the Interior; BRYAN NEWLAND, in his official capacity as Assistant Secretary for Indian Affairs; U.S. DEPARTMENT OF THE INTERIOR; BUREAU OF INDIAN AFFAIRS; OFFICE OF FEDERAL ACKNOWLEDGEMENT, and UNITED STATES OF AMERICA,<br><br>Defendants. | CASE NO. 2:22-cv-633<br><br>ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR *IN CAMERA* REVIEW AND TO COMPEL REDACTED AND WITHHELD DOCUMENTS |

## 1.  INTRODUCTION

Defendants withheld certain documents from Plaintiffs[1] based on the

---

[1] Preferring to defer to litigants, the Court ordinarily refers to parties by the names or labels they choose. But referring to Plaintiffs as "the Duwamish" or "the Duwamish Tribe" could be perceived as a comment on the merits of the case, so the Court opts for procedural designations instead. No disrespect is meant.

ORDER - 1

deliberative process privilege. Plaintiffs move to compel production of the documents, arguing the documents *may* "go to the heart" of their case and that their need for them outweighs any harm that disclosure would cause.

Defendants contend the Court has all the information it needs to rule now that the privilege applies and to deny Plaintiffs' motion, but Plaintiffs are less certain and argue that an *in camera* review of 10 documents—a small sampling—is the best plan to determine whether the privilege applies. The Court agrees.

## 2. BACKGROUND

This case has a long factual and procedural history. The Court addresses only those portions of the record relevant to the dispute about the withheld documents.

In 2013, the Honorable John C. Coughenour, U.S. District Judge for the Western District of Washington, vacated and remanded the Department of the Interior's ("Department") 2001 Final Determination that declined to "acknowledge" Plaintiffs as an Indian tribe under federal acknowledgment regulations published in 1978. *Hansen v. Salazar*, No. 08-cv-717-JCC, 2013 WL 1192607, *11 (W.D. Wash. Mar. 22, 2013) (the *Hansen* litigation). Judge Coughenour remanded the matter to Defendants with instructions to consider Plaintiffs' petition for acknowledgment under the Department's 1994 acknowledgment regulations—the most recent regulations at that time—"or explain why [they] declin[ed] to do so." *Id.*

The Department considered the question on remand and found Plaintiffs' petition for acknowledgment did "not satisfy all seven mandatory criteria in either the 1978 or 1994 regulations." *See* Final Decision on Remand Against Federal Acknowledgment, 80 Fed. Reg. 45230 (July 29, 2015) ("FDR"). While the

ORDER - 2

Department's Final Decision on Remand was pending, however, it published new acknowledgment regulations in 2015. *See* Federal Acknowledgment of American Indian Tribes, 80 Fed. Reg. 37862 (July 1, 2015). Rejecting their requests, the Department declined to reevaluate Plaintiffs' petition under the 2015 regulations. *See* Dkt. No. 48 at 2.

Plaintiffs now sue Defendants under the Administrative Procedure Act ("APA") and the Declaratory Judgment Act and seek mandamus relief. Dkt. No. 2 at 35-49. In sum, they allege Defendants applied the 1994 regulations in an arbitrary and capricious manner and violated Plaintiffs' equal protection and due process rights by refusing to apply the 2015 regulations. *Id.* at 39-45.

After Plaintiffs filed suit, Defendants sent them the certified Administrative Record. The Record consists of two parts: the administrative records the Department submitted in the *Hansen* litigation and the documents the agency considered on remand. *See* Dkt. No. 24-1 at ¶ 7. After comparing information they gathered through other avenues to Defendants' production here, Plaintiffs alleged that the Administrative Record was incomplete—namely, that records showing how the Department applied the 2015 acknowledgment regulations to some petitions, but not Plaintiffs' petition, were missing.

In February 2023, Judge Coughenour ordered Defendants to complete and supplement the Administrative Record with all documents relating to the decision to "differentially apply the 2015 regulations to [Plaintiffs]," documents cited in the Snoqualmie Tribe's petition approving federal status, and a legible version of the "Investigate Indian Affairs, Part 3, by Committee on Indian Affairs, Hearings, 78

Cong., Oct. 1, 1944." Dkt. No. 48 at 6. Judge Coughenour also ordered the Department to produce a privilege log for any documents withheld on privilege grounds. *Id.* at 7.

Defendants supplemented the record in March 2023, and they provided a final privilege log a month later. Dkt. Nos. 56 at 2; 56-2 at 2-7. In all, Defendants identified over 200 documents in response to the Court's order, but withheld in whole or in part (i.e., through redactions) over half the documents based on the deliberative process and other privileges. Dkt. Nos. 56-1 at 2-7; 56-2 at 2-7.

Plaintiffs challenge whether 30 documents withheld by Defendants are actually privileged. Dkt. No. 56-4 at 2-6.[2] Rather than demanding outright, immediate production of the disputed documents, Plaintiffs ask the Court to review a sample of the documents *in camera* "to confirm if the Department properly applied the privilege and, if it has, [to determine] whether the need for disclosure in connection with this case outweighs the potential harm from disclosure." Dkt. No. 55 at 3. Plaintiffs propose a sample of ten of documents for such a review.[3]

---

[2] In their proposed order, Plaintiffs ask the Court to review "the eleven documents identified in Plaintiff's Exhibit B[.]" Dkt. No. 55-1 at 1. But Exhibit B is a copy of Defendants' privilege log; it does not identify documents for a proposed *in camera* review. *See* Dkt. No. 56-2 at 2-7. Plaintiffs probably meant to reference their Exhibit D, which lists ten documents for the Court's *in camera* review and 20 "Other Documents In Dispute." Dkt. No. 56-4 at 2-6.

[3] Plaintiffs' motion papers consistently request review of "11" withheld documents, but as discussed above, they have identified only ten documents for review in their supporting exhibits. *Compare* Dkt. No. 55-1 at 1-2 *with* Dkt. No. 56-4 at 2-6.

# 3.  DISCUSSION

## 3.1  Deliberative process privilege basics.

"[T]he deliberative process privilege shields from disclosure 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)). The privilege is designed "to protect agencies from being forced to operate in a fishbowl" and is "rooted in the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *Id.* (internal quotation marks omitted).

"To properly assert this privilege, an agency must show that a document is both "(1) 'predecisional' or 'antecedent to the adoption of agency policy' and (2) 'deliberative,' meaning 'it must actually be related to the process by which policies are formulated.'" *Transgender L. Ctr. v. Immigr. & Customs Enf't*, 46 F.4th 771, 783 (9th Cir. 2022) (quoting *Nat'l Wildlife Fed'n v. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988)). "Documents are 'predecisional' if they were generated before the agency's final decision on the matter, and they are 'deliberative' if they were prepared to help the agency formulate its position." *Sierra Club, Inc.*, 141 S. Ct. at 786. Whether the agency relies on the documents or whether they represent the agency's final view on a matter is immaterial. *Id.* On the other hand, "'simply designating a document as a 'draft' does not automatically make it privileged under

the deliberative process privilege.'" *Transgender L. Ctr.*, 46 F.4th at 783 (quoting *Wilderness Soc'y v. Dep't of Interior*, 344 F. Supp. 2d 1, 14 (D.D.C. 2004)). And "purely factual material that does not reflect deliberative processes is not protected" at all. *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) (citing *Env't Prot. Agency v. Mink*, 410 U.S. 73, 88 (1973)).

The deliberative process privilege is not absolute, however, and may be overcome by a showing of need that overrides "the government's interest in non-disclosure." *Id.* In determining whether a litigant's need outweighs, district courts in the Ninth Circuit apply the four-factor balancing test set forth in *Warner*: "1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Karnoski v. Trump*, 926 F.3d 1180, 1206 (9th Cir. 2019) (quoting *Warner*, 742 F.2d at 1161).

**3.2    Plaintiffs have not waived their ability to challenge whether the deliberative process privilege applies.**

To start, Defendants argue Plaintiffs waived any challenge to the deliberative process privilege because "all but one of the documents withheld solely based on [the privilege] were withheld [from] the *Hansen* administrative record." Defendants first produced the administrative record to Plaintiffs during the *Hansen* litigation in 2009 along with a declaration disclosing certain documents the Department withheld based on privilege. Plaintiffs respond that Defendants failed to produce a privilege log in the *Hansen* litigation, and that they had no reason to object until they received Defendants privilege log here.

ORDER - 6

Privilege logs allow the party seeking production to assess a claim of privilege and to challenge a claim when necessary based on the description provided on the log. Defendants did not produce a privilege log in the *Hansen* litigation, so it follows that Plaintiffs were unaware to what extent Defendants withheld privileged materials. With a record spanning over 40,000 pages and 10,000 documents by Defendants' count, *see* Dkt. No. 61 at 2, it would be "illogical" to find that Plaintiffs waived their right to challenge whether the deliberative process privilege applied to documents they didn't know existed. *See Ctr. for Env't Health v. Perdue*, No. 18-CV-01763-RS, 2019 WL 3852493, at *3 (N.D. Cal. May 6, 2019).

To be sure, the declaration Defendants produced during the *Hansen* litigation included varying degrees of information about *some* of the challenged documents, but it does not contain sufficient information about *all* the challenged documents, including the authors and recipients of all documents, to constitute a proper privilege log. *See Karnoski v. Trump*, 328 F. Supp. 3d 1156, 1164 (W.D. Wash. 2018) (citing Fed. R. Civ. P. 26(b)(5)(A)(i)-(ii)), mandamus granted, order vacated on other grounds, 926 F.3d 1180 (9th Cir. 2019). Even assuming the declaration sufficed as a privilege log, Defendants offer no legal authority holding that Plaintiffs have waived any challenge to the deliberative process privilege in this litigation by failing to challenge it in the *Hansen* litigation (i.e., prior litigation). While a privilege may be waived sometimes if not timely asserted, *see Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1147 (9th Cir. 2005); Fed. R. Evid. 502(b)(3), the Court could find no corresponding requirement that a privilege be challenged within a set time.

ORDER - 7

On this record, and with no authority holding otherwise, the Court finds that Plaintiffs may still challenge whether Defendants have properly categorized the curtained documents as deliberative.[4]

### 3.3 Claims of agency misconduct do not render the deliberative process privilege categorically inapplicable.

Plaintiffs argue the deliberative process privilege does not apply to any of the documents Defendants withheld because courts do not recognize the privilege in constitutional and APA cases or cases involving alleged governmental misconduct; therefore, they argue, the Court need not consider the *Warner* factors. But under these circumstances, courts in the Ninth Circuit still apply the *Warner* factors to balance the need for deliberative documents verses the government's interests in maintaining the privilege. *See, e.g.*, *Karnoski v. Trump*, 328 F. Supp. 3d at 1161 (W.D. Wash. 2018) (applying the *Warner* balancing test); *Karnoski v. Trump*, 926 F.3d at 1206 (affirming the district court's use of the *Warner* test); *N. Pacifica LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1125 (N.D. Cal 2003) (concluding the deliberative process privilege would likely be overcome after considering the *Warner* factors).

The cases Plaintiffs cite do not adopt a categorical exclusion in the way that Plaintiffs suggest or warrant a different conclusion. For example, Plaintiffs cite *In*

---

[4] Recently, the Ninth Circuit held that agencies need not identify deliberative materials on a privilege log absent a showing of bad faith or improper behavior. *Blue Mountains Biodiversity Project v. Jeffries*, 72 F.4th 991, 997 (9th Cir. 2023). This holding, however, does not affect the Court's analysis regarding waiver, which turns on notice—or the lack thereof—to Plaintiffs about the documents withheld.

ORDER - 8

*re Sealed Case*, 121 F.3d 729, 746 (D.C. Cir. 1997), for the proposition that the deliberative process privilege "disappears altogether when there is any reason to believe government misconduct occurred." Yet the D.C. Circuit held that a sufficient showing of need was still the baseline requirement for "overcom[ing]" the deliberative process privilege. *Id.* The court adopted a "case-by-case, ad hoc" approach to determining need, and suggested "shed[ding] light" on government misconduct as an example that may suffice. *Id.* If anything, *In re Sealed Case* reinforces the notion that overcoming the deliberative process privilege is a need-based inquiry. And in the Ninth Circuit, the *Warner* factors control in determining whether the plaintiff's need for the documents outweighs the government's interest in concealment.

The other cases Plaintiffs cite muddle the discussion about when courts may consider evidence outside the designated administrative record in deciding the merits of a constitutional or APA claim with whether and when to "override the government's interest in non-disclosure." *Warner*, 742 F.2d at 1161. Neither *Washington v. United States Dep't of Homeland Sec.* nor *New York v. United States Dep't of Com.* analyzed the deliberative process privilege or exceptions to the rule—rather, both cases considered whether courts could order discovery and consider evidence outside the administrative record in support of equal protection claims. *See* No. 4:19-CV-5210-RMP, 2020 WL 4667543, at *3; 351 F. Supp. 3d 502, 668 (S.D.N.Y. 2019), *aff'd in part, rev'd in part,* 139 S. Ct. 2551 (2019). Likewise, *Greene* is not on point because the court held informal decision-making was inadequate process for a tribal acknowledgment decision; but here, neither party is arguing a lack of formal adjudication. *See* 64 F.3d at 1275.

Plaintiffs' remaining cases do not impact the Court's analysis either. *Ctr. for Biological Diversity* is just an example of using agency communications as evidence; the district court did not consider the deliberative process privilege. No. 07-0038-PHX-MHM, 2008 WL 659822 (D. Ariz. Mar. 6, 2008). In *Greenpeace v. Nat'l Marine Fisheries Serv.*, the district court held the deliberative process privilege did not apply because the agency determination being made was "one of fact rather than one of law or policy." 198 F.R.D. 540, 544-45 (W.D. Wash. 2000). The court reviewed the documents *in camera,* however, before ruling on the privilege and deciding whether to apply the *Warner* factors. *Id.* at 543. Here, neither side argues the Department's acknowledgement determination was "essentially a factual rather than a legal or policy determination," as the court found in *Greenpeace,* but even if they did, an *in camera* review is warranted to assess the nature of the disputed documents first.

Accordingly, the Court finds no compelling reason to abandon the *Warner* test here.

**3.4   The withheld deliberative materials may satisfy the *Warner* test, but the Court reserves ruling until after it conducts an *in camera* review.**

Citing the Ninth Circuit's recent opinion in *Blue Mountain Biodiversity Project,* Defendants argue that deliberative materials are not a part of the whole record and thus should not be produced absent a showing of bad faith. Dkt. No. 65 at 2.[5] In *Blue Mountain Biodiversity,* the Ninth Circuit resolved a split among the

---

[5] Defendants made this argument in a notice of supplemental authority. Dkt. No. 65 at 2. Plaintiffs contend Defendants violated LCR 7(n) by making an improper

district courts in the Circuit, and held the government may withhold deliberative materials in an APA suit without identifying the documents withheld on a privilege log, except upon a showing of bad faith or improper behavior justifying "production of a privilege log to allow the district [court] to determine whether excluded documents are actually deliberative." 72 F.4th at 997. The Ninth Circuit saved "a detailed exploration of the precise circumstances" warranting the production of a privilege log for another day. *Id.*

Defendants have already produced a privilege log of the withheld deliberative materials, so *Blue Mountain Biodiversity Project* does not advance the Court's analysis in the way that Defendants contend since the privilege log issue was previously decided. The opinion does suggest, however, that if a showing of bad faith is needed to justify the production of a privilege log, something more than mere speculation about bad faith or misconduct is required to trigger an *in camera* review of the challenged deliberative materials.

Plaintiffs bring constitutional and APA claims alleging, among other things, bad faith and improper behavior by Defendants by engaging in informal decision-making behind closed doors or on an undisclosed record in refusing to apply the 2015 acknowledgment regulations despite applying the regulations to other petitioning tribes. Plaintiffs point to several documents reflected on Defendants' privilege log that may help explain why the agency "disregarded" its own

---

argument within a notice of supplemental authority, and they offered to provide a substantive response if requested by the Court. Defendants have overstepped, but the Court finds further response unnecessary since it does not read *Blue Mountain Biodiversity* to foreclose *in camera* review and balancing under *Warner*.

ORDER - 11

regulations, including whether the Muckleshoot Indian Tribe—another tribe opposing Plaintiffs' pursuit of federal recognition—impermissibly influenced the process. Dkt. No. 55 8-10. Plaintiffs also allege (without saying it outright) that the Bush administration's stated reason for reversing the Clinton administration's acknowledgment determination and refusing to apply then-current acknowledgement regulations was pretextual and discriminatory. They argue that several documents reflected on the privilege log, including one purporting to analyze acknowledgment findings against Plaintiffs and another petitioning tribe, may reveal "why the Bush-era [Assistant Secretary of Indian Affairs] ultimately reversed [the earlier] determination on procedural technicalities." Dkt. No. 55 at 10.

In response, Defendants argue "the [contested] documents do not contain any information related to any alleged improper bias or discrimination alleged by [the Duwamish]" and "[a]t most, the documents contain passing references to so-called 'pioneer marriages' that accord with statements in the [Final Determination on Remand] about such marriages." Dkt. No. 61 at 6–7 (citing the corrected Final Decision on Remand dated July 24, 2015, available at http://www.bia.gov/sites/default/files/dup/assets/as-ia/ofa/petition/025_duwami_WA/025_fdr2.pdf). Defendants also argue, if courts allow parties to expand the whole record anytime they bring an equal protection claim, it would encourage everyone to bring such a claim to broaden discovery. Dkt. No. 61 at 10 (citing *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 58 F. Supp. 3d 1191, 1237–38 (D.N.M. 2014)).

The Court finds Defendants' arguments unpersuasive. Plaintiffs' allegations coupled with Defendants' description of the withheld documents on their privilege

log and other evidence in the record, like the emails the Muckleshoot Tribe sent to the Department, provide enough support for a reasonable belief that an *in camera* review may yield some evidence that satisfies the *Warner* factors. *Cf. United States v. Zolin,* 491 U.S. 554, 574–75 (1989) (analyzing crime-fraud exception; holding "before a district court may engage in in camera review at the request of the party opposing the privilege, that party must present evidence sufficient to support a reasonable belief that in camera review may yield evidence that establishes the exception's applicability."). In other words, Plaintiffs offer more than mere speculation.

Moreover, on this record, the Court finds that it is prudent to err on the side of conducting an *in camera* review. *Mink,* 410 U.S. at 93 (1973), superseded by statute on other grounds, (holding, in a FOIA context, *in camera* inspection of challenged deliberative materials is not "automatic," but often "necessary and appropriate."); *see also Chevron U.S.A., Inc. v. United States*, 80 Fed. Cl. 340, 356 (2008) ("The United States Supreme Court has recognized that it is the federal trial courts that are on the 'front line' in determining whether claims of deliberative-process privilege are legitimate.").

As for Defendants' contention that the Court should not expand the "whole record" to consider the contested documents, their arguments are premature. The Court has yet to determine whether the documents should be released to Plaintiffs (i.e., that they've met the *Warner* factors), let alone that the documents should be considered as part of the whole record on the merits of the case. The Court reserves ruling on whether Plaintiffs have shown sufficient cause to justify an expansion of

the administrative record. *See, e.g., Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010) (allowing expansion of the administrative record in some cases, including where "plaintiffs have shown bad faith on the part of the agency."); *New York v. United States Dep't of Com.*, 351 F. Supp. 3d at 668 (concluding "the Court should be able to consider evidence outside the Administrative Record designated by the agency and submitted to the Court when evaluating Plaintiffs' equal protection claim" to "'smoke out' discriminatory purpose.").

Thus, the Court will reserve final finding about whether the *Warner* factors are satisfied until after it has reviewed the challenged documents *in camera*. The Court also reserves its ruling on the remaining aspects of Plaintiffs' motion to compel until after it has conducted an *in camera* review of the ten documents.

### 4. CONCLUSION

Accordingly, the Court GRANTS Plaintiffs' motion in part and ORDERS Defendants to provide the ten documents in question to the Court for *in camera* review within seven days of the date of this order. Specifically, Defendants must provide the Court AR-006080, AR-040616-20, AR-041342-43, AR-041344-48, AR-015396, AR-006037, AR-006038, AR-015162, AR-015917, and AR-015920. *See* Dkt. No. 56-4 at 2–3. The Court reserves ruling on the remaining aspects of Plaintiffs' motion until after it has conducted its *in camera* review.

Dated this 12th day of December, 2023.

_____
Jamal N. Whitehead
United States District Judge

ORDER - 15