UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| THE DUWAMISH TRIBE; and CECILE HANSEN, in her capacity as the Chairwoman of the Duwamish Tribal Council of the Duwamish Tribe,<br><br>             Plaintiffs,<br><br>    v.<br><br>DEB HAALAND, in her official capacity as U.S. Secretary of the Interior; BRYAN NEWLAND, in his official capacity as Assistant Secretary for Indian Affairs; U.S. DEPARTMENT OF THE INTERIOR; BUREAU OF INDIAN AFFAIRS; OFFICE OF FEDERAL ACKNOWLEDGEMENT; and UNITED STATES OF AMERICA,<br><br>             Defendants. | Case No. 22-cv-00633-JNW<br><br>**PLAINTIFF DUWAMISH TRIBE'S OPPOSITION TO DEFENDANTS' MOTION TO REMAND** |

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  ADMINISTRATIVE HISTORY ....................................................................... 2

III. ARGUMENT ..................................................................................................... 4

   A.  The Court must review Claims I and II under the Administrative Procedure Act prior to any remand. ................................................................................. 6

   B.  There is no intervening event justifying the Department's request for remand. ............... 12

   C.  The Department has no "substantial and legitimate" basis for remand. ........................... 14

      1.  The record shows that the Department does not intend to genuinely reconsider the Duwamish Tribe's petition. ........................................ 15

      2.  The Tribe will suffer undue prejudice if this case is remanded. .................................... 18

        i.  A remand would not provide the Tribe with the relief it seeks. ................................ 19

        ii.  A remand could delay this proceeding by up to another decade. .............................. 20

IV. CONCLUSION ................................................................................................. 22

PLS.' OPP. TO DEFS.' MOT. TO REMAND

Case No. 22-cv-00633-JNW

- ii -

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Agua Caliente Tribe of Cupeño Indians of Pala Reservation v. Sweeney*,
  932 F.3d 1207 (9th Cir. 2019) .................................................................................11

*Am. Waterways Operators v. Wheeler*,
  427 F. Supp. 3d 95 (D.D.C. 2019) ......................................................................18, 21

*Assiniboine & Sioux Tribes of the Fort Peck Indian Reservation v. Norton*,
  527 F. Supp. 2d 130 (D.D.C. 2007) ...............................................12, 17, 20, 21

*Borrome v. Attorney General of U.S.*,
  687 F.3d 150 (3d Cir. 2012) .................................................................................21

*Burt Lake Band of Ottawa and Chippewa Indians v. Bernhardt*,
  613 F. Supp. 3d 371 (D.D.C. 2020) ................................................................12, 13

*Cadillac of Naperville, Inc. v. NLRB*,
  14 F.4th 703 (D.C. Cir. 2021) ...............................................................................15

*Cal. Cmtys. Against Toxics v. EPA*,
  688 F.3d 989 (9th Cir. 2012) .................................................................................15

*Cherokee Nation of Okla. v. Norton*,
  389 F.3d 1074 (10th Cir. 2004) ..............................................................................7

*Chinook Indian Nation v. Bernhardt*,
  No. 3:17-cv-05668-RBL, 2020 WL 128563 (W.D. Wash. Jan. 10, 2020) .....................12, 13

*Chinook Indian Nation v. Zinke*,
  326 F. Supp. 3d 1128 (W.D. Wash. 2018)..............................................................11

*In re Clean Water Act Rulemaking*,
  568 F. Supp. 3d 1013 (N.D. Cal. 2021) .................................................................16

*In re Clean Water Act Rulemaking*,
  60 F.4th 583 (9th Cir. 2023) ........................................................................ *passim*

*Conyers v. Merit Sys. Prot. Bd.*,
  388 F.3d 1380 (Fed. Cir. 2004)...............................................................................7

PLS.' OPP. TO DEFS.' MOT. TO REMAND

Case No. 22-cv-00633-JNW

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON  98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

*Ctr. for Biological Diversity v. Haaland*,
    641 F. Supp. 3d 835 (N.D. Cal. 2022) ...................................................................18

*Duwamish et al. v. United States*,
    79 Ct. Cl. 530 (Ct. Cl. 1934) ..........................................................................9

*Duwamish Tribe v. United States*
    5 Ind. Cl. Comm. 117 (Ind. Cl. Comm. 1957)) ...........................................9

*FEC v. Legi-Tech., Inc.*,
    75 F.3d 704 (D.C. Cir. 1996) ........................................................................17

*In re Fed. Acknowledgment of the Duwamish Tribal Org.*,
    No. IBIA 16-008, 2019 WL 1930741 (IBIA Apr. 17, 2019) ........................4

*Firebaugh Canal Co. v. United States*,
    203 F.3d 568 (9th Cir. 2000) ........................................................................10

*Greene v. Babbitt*,
    943 F. Supp. 1278 (W.D. Wash. 1996) ........................................................10

*Hansen v. Salazar*,
    No. C08-0717-JCC, 2013 WL 1192607 (W.D. Wash. Mar. 22, 2013) .............3, 13

*James v. U.S. Dep't of Health & Human Servs.*,
    824 F.2d 1132 (D.C. Cir. 1987) ...................................................................11

*Keltner v. United States*,
    148 Fed. Cl. 552 (Fed. Cl. 2020) ........................................................ *passim*

*Limnia, Inc. v. U.S. Dep't of Energy*,
    857 F.3d 379 (D.C. Cir. 2017) ........................................................12, 15, 18

*Lutheran Church-Mo. Synod v. FCC*,
    141 F.3d 344 (D.C. Cir. 1998) ...............................................................14, 15

*McGirt v. Oklahoma*,
    140 S. Ct. 2452 (2020) ...................................................................................7

*Nat. Res. Def. Council v. EPA*,
    38 F.4th 34 (9th Cir. 2022) .........................................................................4, 5

*Pac. Coast Fed'n of Fishermen's Assocs. v. Raimondo*,
    No. 1:20-cv-00426-DAD-EPG, 2022 WL 789122 (E.D. Cal. Mar. 11, 2022) ........18

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON  98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

*Rahman v. United States*,
　　149 Fed. Cl. 685 (Fed. Cl. 2020) ........................................................................12

*SKF USA Inc. v. United States*,
　　254 F.3d 1022 (Fed. Cir. 2001)................................................................... *passim*

*United States v. Dion*,
　　476 U.S. 734 (1986)................................................................................................7

*Upper Skagit Tribe of Indians, et al. v. United States*,
　　13 Ind. Cl. Comm. 583 (Ind. Cl. Comm. 1964).................................................10

**Statutes**

5 U.S.C. § 703................................................................................................10, 11

5 U.S.C. § 706................................................................................................10, 11

25 U.S.C. § 70 *et seq*..............................................................................................9

Act of 1966, Pub. L. No. 89-660, 80 Stat. 910 (1966)......................................10

Federally Recognized Indian Tribe List Act of 1994, Pub. L. No. 103-454, 108
　　Stat. 4791 (1994) (codified at 25 U.S.C. § 5130 *et seq.*)......................7, 8, 10, 19

Indian Claims Commission Act, 60 Stat. 1049, ch. 959 (1946) ....................9

Treaty of Point Elliott, 12 Stat. 927 (1859) ...............................................8, 9

**Other Authorities**

25 C.F.R. § 83.12...............................................................................................19

79 Fed. Reg. 30,766 (May 29, 2014) ...............................................................3

80 Fed. Reg. 37,862 (July 1, 2015)........................................................ *passim*

87 Fed. Reg. 24,908, 24,908 (Apr. 27, 2022) ................................................14

U.S. Const. art. I, § 8, cl. 3 ...............................................................................7

PLS.' OPP. TO DEFS.' MOT. TO REMAND

Case No. 22-cv-00633-JNW

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON  98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

- v -

# I.    INTRODUCTION

The U.S. Department of the Interior ("Department") seeks a voluntary remand to evade judicial review of its unlawful and unjust refusal to place the Duwamish Tribe on its list of federally recognized tribes. The Department offers no cognizable justification to support a voluntary remand, and remanding to the Department for yet further administrative process would be highly prejudicial to the Duwamish Tribe, who has been seeking federal acknowledgment before the Department for 47 years. The Duwamish Tribe asserts claims that are ripe for adjudication right now, require no further fact finding, and are dispositive: if granted, those claims would obviate the need for any further consideration of the Tribe's petition by the Department.

In particular, the Tribe contends that the U.S. government has already recognized the Duwamish Tribe through congressional action, statutes, and judicial rulings, that the Department lacks authority to find otherwise, and so the Department's finding to the contrary is erroneous as a matter of law. In the Tribe's first and second claims for relief (Claims I and II), the Duwamish asks this Court to review the evidence of prior federal recognition, declare that the U.S. government has indeed already recognized the Duwamish Tribe, and order the Department to place the Duwamish Tribe on its list of federally recognized tribes. A remand is neither necessary nor appropriate to resolve those claims. Indeed, the Department does not commit to reconsider its refusal to credit those statutes and rulings as constituting prior recognition by the U.S. government. The Department has also unambiguously told this Court that reconsideration under the 2015 regulations would lead to another denial of recognition. There is no basis to defer the Court's review of the Department's decision on those issues, and further delay would only harm the Duwamish.

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON  98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

In addition, while the alternative relief the Tribe seeks for Claims III, IV, and V is a remand, the Department's voluntary remand would not provide all of the relief the Duwamish seeks. Critically, the Duwamish Tribe has challenged the validity of the Department's regulations concerning previously recognized tribes and seeks a remand with instructions so that the Department does not commit the same errors again. Allowing a voluntary remand without necessary sideboards would ignore instructions the Tribe contends are necessary, and would risk repeat of error.

Because the Department's remand motion lacks justification and would be highly prejudicial to the Duwamish, the Court should deny that motion and allow this case to proceed to summary judgment.

## II.   ADMINISTRATIVE HISTORY

A brief history of the Duwamish Tribe's federal recognition process showcases the extent of its efforts for federal recognition and the delay on the part of the Department:

- On June 7, 1977, the Duwamish filed a letter with the Department expressing its intent to petition for federal acknowledgment as an Indian tribe. AR 36.[1]

- In November 1987, the Tribe submitted its formal petition for federal acknowledgment. AR 36.

- On January 19, 2001, the Acting Assistant Secretary of Indian Affairs ("ASIA") Anderson provided his Federal Register notice for the Duwamish Final Determination to the Branch of Acknowledgment and Research recommending federal recognition of the Duwamish Tribe. AR 38. Secretary Anderson found that "express statutory references" to the Tribe were "unequivocal expressions of congressional recognition." AR 7082.

- On January 20, 2001, a new administration took office and the Department of Interior leadership, including Secretary Anderson, vacated their positions. AR

---

[1] Administrative Record ("AR") excerpts cited in this brief are attached as Exhibit 1 to the Declaration of Courtney Neufeld ("Neufeld Decl.").

PLS.' OPP. TO DEFS.' MOT. TO REMAND

Case No. 22-cv-00633-JNW

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

38.

- On September 25, 2001, the new ASIA reversed the final determination that would have acknowledged the Duwamish and failed to consider the Tribe under the 1994 Regulations. AR 38–39.

- On December 31, 2001, the Duwamish filed a request for reconsideration with the Interior Board of Indian Appeals ("IBIA"). AR 39.

- On January 4, 2002, the IBIA referred two issues to the Secretary of the Interior: (1) "Whether the January 19, 2001, action taken by the Acting Assistant Secretary [Anderson] was a final determination to acknowledge the [Duwamish]" and (2) "if so, whether the September 25, 2001, final determination should be retracted and the January 19, 2001, final determination reinstated." AR 39. (This is well over 14 years from the formal submission of the petition in 1987.)

- On May 8, 2002, Secretary of the Interior Gale A. Norton declined to request that the ASIA reconsider the Department's Final Determination declining to acknowledge the Duwamish. AR 39. This decision became effective on May 8, 2002 constituting a final agency action. AR 39.

- On May 7, 2008, the Duwamish Tribe challenged the final determination against acknowledgment in this Court in *Hansen v. Salazar*, No. C08-0717-JCC, 2013 WL 1192607 (W.D. Wash. Mar. 22, 2013) (Coughenour, J.).

- On March 22, 2013, this Court vacated the Department's decision denying the Duwamish federal recognition, finding it to be "arbitrary and capricious" for failure to consider the Duwamish under the then current regulations, which were adopted in 1994. *Id.* at *9–10. The Court remanded the matter back to the Department "to either consider the Duwamish petition under the 1994 acknowledgment regulations or explain why it declines to do so." *Id.* at *11.

- On May 29, 2014, the Department proposed new federal acknowledgment regulations, which were adopted on July 1, 2015. 79 Fed. Reg. 30,766 (May 29, 2014); *see* 80 Fed. Reg. 37,862 (July 1, 2015) ("2015 Regulations").

- On October 28, 2014, the Duwamish sent a letter to the Department requesting consideration under the 2015 Regulations. AR 9.

- On December 24, 2014, the Duwamish sent a second letter to the Department requesting consideration under the 2015 Regulations. AR 15.

- On July 24, 2015, the Department issued its Final Decision on Remand ("FDR") refusing to consider the Duwamish under the 2015 Regulations and again

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

declining to acknowledge the Duwamish Tribe. AR 34, 48–49.

- On April 17, 2019, the IBIA issued a decision upholding the FDR and referring various issues to the Secretary of Interior ("Secretary"). *In re Fed. Acknowledgment of the Duwamish Tribal Org.*, No. IBIA 16-008, 2019 WL 1930741, at *36 (IBIA Apr. 17, 2019). (This is over six years from the date of Judge Coughenour's remand order.)

- The Final Decision on Remand became a final agency action on July 17, 2019, when the Secretary declined to consider any of the issues referred by the IBIA. AR 6022.[2]

- On May 11, 2022, the Duwamish filed suit challenging both the regulations themselves and the Department's ultimate decision. Dkt. No. 1 (Compl.).

### III.    ARGUMENT

The leading case on the standards for voluntary remands is *SKF USA Inc. v. United States*, 254 F.3d 1022 (Fed. Cir. 2001). *See Keltner v. United States*, 148 Fed. Cl. 552, 561 (Fed. Cl. 2020) ("*SKF USA* is by far the leading authority on the law of voluntary remands. The Third, Fourth, Sixth, Seventh, Ninth, and D.C. Circuits explicitly have followed or have cited the decision with approval.") (citing, e.g., *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012)); *see also Nat. Res. Def. Council v. EPA*, 38 F.4th 34, 60 (9th Cir. 2022) (also citing *SKF USA*). In *SKF USA*, the court identified five positions an agency can take when faced with judicial review of its action. 254 F.3d at 1027–29. Three are relevant here.

First, an agency "may choose to defend [its] decision on the grounds previously articulated by the agency." *Id.* at 1028. In such a situation, the "obligation of the court is clear," it must "review the agency's decision under the Administrative Procedure Act and any other applicable law." *Id.*

Second, an agency "may seek a remand because of intervening events outside of the

---

[2] This process took six years from the date of Judge Coughenour's remand order to result in a final agency action.

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON  98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

agency's control, for example, a new legal decision or the passage of new legislation." *Id*. Remand is justified "if the intervening event may affect the validity of the agency action." *Id.*; *Nat. Res. Def. Council*, 38 F.4th at 60 ("[I]ntervening events outside of the agency's control . . . counsel in favor of granting such a remand request . . . [but] we have '*broad discretion*' in deciding whether to do so." (emphasis added) (internal quotation marks and citation omitted)).

Third, even without an intervening event, an agency "may request a remand (without confessing error) in order to reconsider its previous position." *SKF USA*, 254 F.3d at 1029. In that situation, "the reviewing court has discretion over whether to remand," and a remand request is "usually appropriate" when the agency's concern is "substantial and legitimate," but may be refused if the request is "frivolous or in bad faith." *Id.*; *see Keltner*, 148 Fed. Cl. at 566–67 (noting "a great deal of space on the discretion continuum between whether a remand request is 'substantial and legitimate' or is 'in bad faith and frivolous,'" and denying remand because of the "total absence of any meaningful justification for a remand" and "the attendant further delay that would result").

In all situations, courts "possess 'broad discretion' in deciding whether to grant voluntary remands." *In re Clean Water Act Rulemaking*, 60 F.4th 583, 596 (9th Cir. 2023) (quoting *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018)); *Keltner*, 148 Fed. Cl. at 563 ("the trial court has substantial discretion depending on the timing of the government's motion [and] its representations regarding the reasons for a remand"). The Department agrees. Dkt. No. 73 at 7 ("courts retain 'broad discretion' in deciding whether to grant an agency's request for voluntary remand").

In its motion, the Department both defends the merits of its decision to deny the Duwamish

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

recognition; and it seeks a voluntary remand to reconsider its prior decision because of alleged intervening events. The Department's purported reasons, however, do not justify remand of the Duwamish petition—which has toiled at the agency level for nearly 50 years at this point. The Department largely admits it intends to defend the merits of its decision, which obliges the Court to review the Tribe's claims. Likewise, the intervening events cited by the Department to justify remand are irrelevant to and have no bearing on this case. The Department also failed to put forth any "substantial and legitimate" reason for a remand, and its failure to provide such a justification indicates that the remand request is simply a maneuver to avoid judicial review of its decision before it can button up its already predetermined outcome.

A.      **The Court must review Claims I and II under the Administrative Procedure Act prior to any remand.**

The Duwamish Tribe and the Department disagree on a fundamental issue: whether the U.S. government has previously recognized the Duwamish Tribe as the same entity as, or the successor in interest to, the entity that signed the Treaty of Point Elliott in 1855. The Department maintains that the Duwamish Tribe was created in 1925 and is a completely separate entity than the historic treaty tribe. AR 43–45. The Duwamish contends otherwise: it is the historic treaty tribe. Dkt. No. 2 (Am. Compl.).

The Department's remand motion is fatally flawed because it does not commit to reconsidering this fundamental question. Indeed, the Department's motion reiterates its position and contends the Tribe's claims lack merit. Dkt. No. 73 at 12–15. Where the Department seeks to "defend [its] decision on the grounds previously articulated by the agency," the "obligation of the court is clear": it must "review the agency's decision under the [APA] and any other applicable law." *SKF USA*, 254 F.3d at 1028; *see Keltner*, 148 Fed. Cl. at 560 (concluding when "the agency

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON  98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

defends its decision on the grounds articulated by the agency" it is "by definition . . . *not* [a] voluntary remand situation[]").

In bringing Claims I and II, the Duwamish Tribe asks the Court to declare that the U.S. government has already recognized the Tribe through the Treaty of Point Elliott as well as numerous statutes and judicial decisions both before and after 1925, and that the Department lacks authority to override such recognitions. It further seeks to compel the Department to add the Duwamish Tribe to its list of recognized tribes in accordance with the Federally Recognized Indian Tribe List Act of 1994 ("List Act"), Pub. L. No. 103-454, 108 Stat. 4791 (1994) (codified at 25 U.S.C. § 5130 *et seq.*). Congress's intent in passing the List Act was "clear," as the Act expressly contemplates that Indigenous tribes may be recognized *outside* of the Department's regulatory process, including by an "Act of Congress" or "a decision of a United States court." *Cherokee Nation of Okla. v. Norton*, 389 F.3d 1074, 1076 (10th Cir. 2004) (citing Pub. L. No. 103-454, § 103(3)). Most critically, the List Act provides that "a tribe which has been recognized in one of these manners may not be terminated except by an Act of Congress," recognizing that "the Constitution, as interpreted by Federal case law, invests *Congress* with plenary authority over Indian Affairs." Pub. L. No. 103-454, § 103(1), (4) (codified at 25 U.S.C. § 5130 notes[3]) (emphasis added). *See, e.g.*, U.S. CONST. art. I, § 8, cl. 3 (the Indian Commerce Clause); *United States v. Dion*, 476 U.S. 734, 738 (1986) ("As a general rule, Indians enjoy exclusive treaty rights . . . unless such rights were clearly relinquished by treaty or have been modified by Congress."); *accord*

---

[3] The fact that Congress's formal findings were "codified as a statutory note is of no moment." *Conyers v. Merit Sys. Prot. Bd.*, 388 F.3d 1380, 1382 n.2 (Fed. Cir. 2004). "[P]rovision[s] of an Act must be read 'in the context of the entire Act, rather than in the context of the 'arrangement' selected by the codifier.'" *Id.* (quoting *United States v. Welden*, 377 U.S. 95, 98 n.4 (1964)).

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

*McGirt v. Oklahoma*, 140 S. Ct. 2452, 2463 (2020) (stating that Congress must "clearly express its intent" to terminate a tribal right, "[c]ommon[ly with an] [e]xplicit reference to cession or other language evidencing the present and total surrender of all tribal interests" (internal quotation marks omitted)). The Department therefore has no power to terminate the prior federal recognition of the Duwamish Tribe (summarized below), absent a clearly expressed Act of Congress terminating the Tribe's prior recognition. *See* Pub. L. No. 103-454, § 103(1)–(5) (codified at 25 U.S.C. § 5130 notes). This authority demonstrates that the Tribe's Claims I and II involve pure legal questions that are ripe for this Court to resolve.[4]

After the Duwamish Tribe and other allied tribes in Western Washington signed the Treaty of Point Elliott with the United States in 1855, the federal government—including Congress, U.S. courts, and the Department—repeatedly recognized the Duwamish as an Indigenous tribe that has resided in present-day Seattle since time immemorial. AR 2852, 2862. The Department contends that the Duwamish Tribe now before the Court is somehow divorced from the treaty tribe led by Chief Seattle. Dkt. No. 73 at 4. But the historical record proves otherwise. The United States repeatedly and continuously recognized the Duwamish Tribe as the treaty tribe long before and after 1925. A brief timeline of the federal government's recognition of the Duwamish as the historic treaty tribe is summarized here:

- **1855:** The United States executed the Treaty with the Duwamish and 21 allied tribes. Chief Seattle, who signed on behalf of the Duwamish and Suquamish Tribes, was the lead signatory. *See* Treaty between the United States and the Dwámish, Suquámish, and other allied and subordinate Tribes of Indians in Washington Territory ("Treaty of Point Elliott"), 12 Stat. 927 (1859)

---

[4] To be clear, the Tribe is *not* asking the Court to substitute its judgment for that of the agency. This Court need not recognize the Duwamish in the first instance because the Tribe has already been federally recognized, repeatedly, over the last 169 years. *See infra* Section III(A). The Tribe simply seeks to vindicate its rights as a recognized tribe through declaratory and mandamus relief, which is expressly available under the APA.

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON  98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

1    (concluded at Point Elliott, January 22, 1855); AR 2862.

2    • **1859:** Congress ratified the Treaty. *See* Treaty of Point Elliott, 12 Stat. 927; AR
3      2828.

4    • **1860–1924**: Congress passed an Act every year (about 50 total) denominating
       the "D'Wamish and other allied Tribes," which appropriated funds for fulfilling
5      treaty promises to those tribes. AR 2870–71. Once the appropriations
6      legislation ended in the 1920s, from 1925 to the 1950s, the Department issued
       Duwamish members Indian identification cards (a.k.a. "blue cards") affirming
7      their treaty fishing and hunting rights. AR 2910, 2914, 3032–33.

8    • **1934**: The U.S. Court of Claims ruled that the Duwamish had standing as an
       Indigenous tribe and treaty signatory to bring claims against the federal
9      government for lost communal property and unpaid annuities. *Duwamish et al.
       v. United States*, 79 Ct. Cl. 530, 532 (Ct. Cl. 1934).[5] At that time, the Executive
10     Branch did not dispute (as it does today) that the Tribe was a "part[y] to the
       treaty of Point Elliott." *Id.* at 575; *see also* Neufeld Decl., Ex. 2 at 4–5 (1935
11     Petition for Writ of Certiorari listing the Duwamish Tribe as a lead plaintiff and
12     indicating it is a "part[y] to the treaty made with [the United States] at Point
       Elliot[t], January 22, 1855").[6]
13
     • **1953**: the House of Representatives issued a congressional report identifying
14     the Duwamish as an Indigenous tribe multiple times. *See* AR 42212, 43008,
15     43010.[7] Those repeated identifications were based on a list of Washington tribes
       compiled by the Department—one that consisted of 36 total tribes, including
16     the Duwamish. AR 2916.

17   • **1957–64:** The Indian Claims Commission ("ICC"), with express subject matter
       jurisdiction from Congress (*see* Indian Claims Commission Act, 60 Stat. 1049,
18     ch. 959 (1946) (former 25 U.S.C. § 70 *et seq.*)), issued decisions concluding
19     that the Duwamish is "an identifiable tribe of American Indians" and is the

20   _____
     [5] The Duwamish Tribe was the lead plaintiff in this action, along with other Western Washington tribes that asserted
21   claims against the United States, including the Muckleshoot, Suquamish, Tulalip, Lummi, Snoqualmie, Samish, and
     many other tribes that are now federally recognized. *See* 79 Ct. Cl. at 532.

22   [6] There are other relatively recent examples in which the Department recognized the existence of the Duwamish Tribe.
     In 1974, for example, a Department task force, led by Peter P. Three Stars, a Tribal Operations Specialist at the time
23   who later became the Superintendent of the Bureau of Indian Affairs' Western Washington Agency, investigated the
     tribal status of the Duwamish, evaluating the Tribe under criteria used by the Department at that time, and
24   recommended that the Department "officially recognize the Duwamish descendants as an Indian tribe." AR 2920–21.

25   [7] The Duwamish Tribal Council is the *only* tribal council listed as an "Indian tribal governing bod[y]" (on Table K of
     that 1953 Report) that is not currently recognized by the Department. *See* AR 43010.
26

PLS.' OPP. TO DEFS.' MOT. TO REMAND

Case No. 22-cv-00633-JNW

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON  98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

"successor in interest to . . . the entity that was a party to the Treaty of January 22, 1855."). AR 24883–84 (*Duwamish Tribe v. United States* (Docket No. 109), 5 Ind. Cl. Comm. 117 (Ind. Cl. Comm. 1957)); *see also* Neufeld Decl., Ex. 3 (*Upper Skagit Tribe of Indians, et al. v. United States*, 13 Ind. Cl. Comm. 583 (Ind. Cl. Comm. 1964)) (allocating $23,863.17 specifically to the Duwamish in light of the 1957 determinations).

- **1966:** Congress passed an Act denominating the Duwamish, which funded the ICC judgment in favor of the Duwamish. Act of 1966, Pub. L. No. 89-660, 80 Stat. 910 (1966).

- **1976–77**: A Congressional commission, the American Indian Policy Review Commission ("AIPRC"), issued two reports that concluded the Duwamish satisfied every single criteria for "determining if a group constitutes a 'tribe,'" and that the Duwamish "continue[d] to function as [a] tribal entit[y]" despite "the enormous odds against [its] survival." *See, e.g.*, AR 1171, 1174.

These authorities clearly establish that the United States has recognized the Duwamish Tribe. Once recognized, only Congress can terminate recognition. List Act, Pub. L. No. 103-454, § 103(4) ("[A] tribe which has been recognized in one of these manners may not be terminated except by an Act of Congress."). Congress has not terminated recognition of the Duwamish Tribe. The Department has no authority to terminate the Tribe's prior recognition. *Id*. This lawsuit asks the Court to declare and give effect to the Tribe's status as being recognized by the United States. The Court can and should resolve these issues now.

Moreover, contrary to the Department's contentions, Dkt. No. 73 at 12–13, the relief the Duwamish requests in Claims I and II is squarely within the authority of this Court to order. The Tribe's requested declaratory and mandamus relief is expressly contemplated by the APA, 5 U.S.C. §§ 703, 706(1), and courts routinely grant such relief "[w]hen the intent of Congress is clear." *Firebaugh Canal Co. v. United States*, 203 F.3d 568, 574, 578 (9th Cir. 2000) (finding an Act of Congress mandated the agency to take action and affirming the district court's order to compel agency action under 5 U.S.C. § 706(1)); *see Greene v. Babbitt*, 943 F. Supp. 1278, 1289

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

(W.D. Wash. 1996) (Zilly, J.) (granting the Samish Tribe "relief *without* remand to the agency," which ultimately resulted in the Department's recognition of the Samish) (emphasis added).[8]

The Department's contention that the only relief available is serial remands to the Department, Dkt. No. 73 at 12–13, simply ignores the plain language of the APA, 5 U.S.C. §§ 703, 706(1). The Department made a decision after the Tribe exhausted the Part 83 process. The Duwamish timely challenged that decision under the APA, contending among other things that the decision is "not in accordance with law." *Id*. § 706. The Ninth Circuit recognized that the court's broad discretion regarding voluntary remands "allows a court to deny a voluntary remand—and thus to proceed to decide the merits of the case—if the risk of harm from indefinitely leaving an allegedly unlawful rule in place outweighs considerations of judicial and administrative efficiency." *In re Clean Water Act Rulemaking*, 60 F.4th at 596. Here, again the Department seeks to unlawfully ignore the Duwamish Tribe's prior federal acknowledgment. The full suite of APA remedies is presently available to the Duwamish to challenge the Department's decision. *See* 5 U.S.C. § 706.

Because the Department is not committing to reconsider its decision on the fundamental question of the Tribe's prior federal recognition and instead defends that position in its own motion, this case does not even fall into the category of cases eligible for voluntary remand. *See Keltner*, 148 Fed. Cl. at 560 (cases where an agency defends its decision "by definition are *not*

---

[8] To support its position that APA declaratory and mandamus relief are unavailable, it cites to cases that have little relevance here. *See* Dkt. No. 73 at 13–14. Those cases all involve petitioning tribes who failed to petition the Department at all and thus failed to exhaust the agency's regulatory process (a.k.a., the "Part 83 process"). *See, e.g., Agua Caliente Tribe of Cupeño Indians of Pala Reservation v. Sweeney*, 932 F.3d 1207, 1216–18 (9th Cir. 2019); *James v. U.S. Dep't of Health & Human Servs.*, 824 F.2d 1132, 1137 (D.C. Cir. 1987); *Chinook Indian Nation v. Zinke*, 326 F. Supp. 3d 1128, 1137 (W.D. Wash. 2018). And in the case of the Duwamish, there is extensive documentation of prior federal recognition through modern times. Those cases are not useful precedents for this case.

PLS.' OPP. TO DEFS.' MOT. TO REMAND

Case No. 22-cv-00633-JNW

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

voluntary remand situations") (emphasis in original). Even if it did, remand should be denied

because it would "serve no useful purpose." *Rahman v. United States*, 149 Fed. Cl. 685, 689 (Fed.

Cl. 2020) (citing *Martinez v. United States*, 333 F.3d 1295, 1310 (Fed. Cir. 2003)); *see also, e.g.*,

*Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 387–88 (D.C. Cir. 2017) (reversing remand

order where petitioner lacked any other "opportunity to vindicate its statutory rights under the

APA" and "judicial vindication" was necessary to address the agency's "deficiencies [that

petitioner] claim[ed] were pretext for the Department's unlawful political favoritism");

*Assiniboine & Sioux Tribes of the Fort Peck Indian Reservation v. Norton*, 527 F. Supp. 2d 130,

135 (D.D.C. 2007) ("*Assiniboine & Sioux Tribes*") (declining to remand to the Department to

develop trust accounting plan for tribes where plan was unlikely to aid the court's determination

on the threshold question of the Department's duty and breach).

**B.     There is no intervening event justifying the Department's request for remand.**

The Department has failed to identify an intervening event that would justify a remand. An

intervening event justifies a remand only where that event "may affect the validity of the agency

action." *SKF USA*, 254 F.3d at 1028. There is no such intervening event here.

The Department contends that two district court decisions issued four years ago constitute

"intervening events" in this case: *Chinook Indian Nation v. Bernhardt*, No. 3:17-cv-05668-RBL,

2020 WL 128563 (W.D. Wash. Jan. 10, 2020) ("*Chinook*"), and *Burt Lake Band of Ottawa and

Chippewa Indians v. Bernhardt*, 613 F. Supp. 3d 371 (D.D.C. 2020) ("*Burt Lake*").[9] In *Chinook*

and *Burt Lake*, the petitioning tribes challenged the Department's failure to allow tribes whose

---

[9] The *Chinook* and *Burt Lake* decisions were issued *four years ago* and the Department has not explained why it waited nearly *two years* after this litigation was filed (in May 2022) to request remand, given the agency has been on notice of these two cases since 2020.

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON  98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

petitions the Department had previously denied to re-petition for recognition under the 2015 Regulations. *Chinook*, 2020 WL 128563, at *5; *Burt Lake*, 613 F. Supp. 3d at 376. Unlike here, in both cases the tribes' windows for appeal "ha[d] long since passed." *Burt Lake*, 613 F. Supp. 3d at 375; *see Chinook*, 2020 WL 128563, at *1. The district courts concluded that the Department's decision to remove the re-petition process from the 2015 Regulations was "illogical, conclusory, and unsupported by the administrative record." *Chinook*, 2020 WL 128563, at *8; *see Burt Lake*, 613 F. Supp. 3d at 384–85.

Those cases have nothing to do with this case. The Duwamish Tribe is not challenging the failure of the 2015 Regulations to allow for re-petitioning. The Tribe is seeking judicial review of the Department's decision to deny recognition to the Duwamish Tribe. Neither *Chinook* nor *Burt Lake* has any bearing on "the validity" of the Department's decision to deny recognition to the Duwamish Tribe. *SKF USA*, 254 F.3d at 1028. Indeed, the Department concedes that "the case at bar does not explicitly involve re-petitioning." Dkt. No. 73 at 8. The Department ignores the fact that Judge Coughenour granted summary judgment against the Department indicating the Duwamish are clearly not re-petitioning. *See Hansen*, 2013 WL 1192607, at *11 (remanding to Department for further consideration).

The Department contends these cases are relevant because it denied the Tribe's request for consideration under the 2015 Regulations as "tantamount to re-petitioning," which the federal acknowledgment regulations "explicitly prohibit." Dkt. No. 73 at 8–9 (citing FDR at 2–3). This contention makes little sense. Despite the rulings in *Chinook* and *Burt Lake*, the Department still has not changed its regulations to allow re-petitioning: they still "explicitly prohibit" re-petitioning. *Id.* The so-called "intervening events" have not altered the status quo.

PLS.' OPP. TO DEFS.' MOT. TO REMAND

Case No. 22-cv-00633-JNW

- 13 -

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

The Department's cryptic reliance on an unpublished notice of proposed rulemaking "addressing the availability of re-petitioning" is unavailing. Dkt. No. 73 at 8. Even assuming this notice contemplates some form of re-petitioning (which the Department does not even claim[10]), it still would provide no basis for voluntary remand because it is non-binding on the agency. *See Lutheran Church-Mo. Synod v. FCC*, 141 F.3d 344, 349 (D.C. Cir. 1998) (denying agency's request for voluntary remand based on a "post-argument 'policy statement,' which . . . does not bind the [agency] to a result in any particular case," and which the court characterized as a "novel" and "rather unusual legal tactic[] . . . to avoid judicial review").

The Department also does not commit to changing the status quo in light of *Chinook* and *Burt Lake*. The Department acknowledges that it "has always taken the position that petitions for federal acknowledgment denied under the 1978 and 1994 regulations would also be denied if assessed under the 2015 regulations." Dkt. No. 73 at 9. The Department then merely observes that two courts have "questioned that position." *Id*. That statement says absolutely nothing about the Department's intentions, or whether there has been any change to the position the Department has "always taken" that the results are the same under the 1978, 1994, or 2015 regulations. *Id.*

*Chinook* and *Burt Lake* are not "intervening events," do not affect the validity of the Department's decision in this case, and thus cannot support a voluntary remand.

## C. The Department has no "substantial and legitimate" basis for remand.

The Department's alternative justification for voluntary remand also fails. An agency may request a voluntary remand to reconsider its decision, provided that the agency's motivating

---

[10] Less than two years ago, but following *Chinook* and *Burt Lake*, the Department formally proposed "to maintain the [re-petition] ban." 87 Fed. Reg. 24,908, 24,908 (Apr. 27, 2022).

PLS.' OPP. TO DEFS.' MOT. TO REMAND

Case No. 22-cv-00633-JNW

- 14 -

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

concern is "substantial and legitimate" and not "frivolous or in bad faith." *SKF USA*, 254 F.3d at 1029; *Cal. Cmtys. Against Toxics*, 688 F.3d at 992. A remand request is "substantial and legitimate" where it is "compelling," such as where the agency "inten[ds] to reconsider, re-review, or modify the original agency decision" and the agency "explain[s] *how* or *why* the [agency] would reconsider its decision." *Keltner*, 148 Fed. Cl. at 562, 564–65 (emphasis in original); *Cadillac of Naperville, Inc. v. NLRB*, 14 F.4th 703, 719 (D.C. Cir. 2021) (granting NLRB request for remand where an intervening NLRB decision changed how the agency would have assessed the issue in the first instance). A reconsideration is not genuine if the record shows that the agency has "all but prejudged" the merits of its decision. *Keltner*, 148 Fed. Cl. at 567.

Moreover, while genuine reconsideration is necessary, it is "not always a sufficient condition." *Id.* at 562 (quoting *Am. Waterways Operators v. Wheeler*, 427 F. Supp. 3d 95, 98–99 (D.D.C. 2019)). The "[C]ourt must also 'consider whether remand would unduly prejudice the non-moving party.'" *Id.* For example, the Court should consider whether the agency's request "was a 'ploy' merely 'to avoid judicial review,'" or if "remand would not 'further the interests of justice,' but would delay this case further." *Id.* at 560, 565.

### 1. The record shows that the Department does not intend to genuinely reconsider the Duwamish Tribe's petition.

The Department has not expressed a genuine intent to actually reconsider its decision denying the Duwamish recognition. When an agency does not actually intend to reconsider the challenged decision, "that is reason enough to deny a voluntary remand." *In re Clean Water Act Rulemaking*, 60 F.4th at 596; *see, e.g.*, *Limnia*, 857 F.3d at 387 (reversing remand order where agency stopped short of offering to reconsider the petitioner's application and instead "offered to review any new applications"); *Lutheran Church-Mo. Synod*, 141 F.3d at 349 (denying the

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

government's "novel, last second motion to remand" on appeal because it did "not bind the [agency] to a result" and noting that "the [agency] ha[d] on occasion employed some rather unusual legal tactics when it wished to avoid judicial review, but th[at] ploy [took] the prize").[11]

The Department denied the Tribe's petition for failing three of seven criteria necessary for recognition under the Department's regulations. *See* AR 33 ("This [FDR] concludes that the DTO petitioner does not meet criteria 83.7(a), 83.7(b), and 83.7(c) under either the 1978 or the 1994 regulations."). The Department does not commit to reconsidering these three criteria, or commit to changing its position that the Duwamish petition would also be denied under the 2015 regulations. *See* Dkt. No. 73 at 10–11 (stating only that the Department has "concerns" that *Chinook* and *Burt Lake* suggest that the outcome of this case could be different under the 2015 regulations). The Department says it will give the Tribe an "opportunity to make arguments" about the use of marriages as evidence of community. Dkt. No. 73 at 9; *see also id*. at 11. But any such arguments would be directed at only one criteria necessary for recognition. The Department does *not* commit to reconsidering its position that the Tribe fails to meet the other two criteria, nor its position that the Tribe is "not a continuation of the D'Wamish and other allied tribes" and not previously recognized by the federal government. AR 34. Thus, a remand to "make arguments" about one criterion would be pointless if failure of the other two criteria is pre-determined.

The Department's failure to commit to genuine reconsideration is bolstered by the record. Until the assertions of the Department's counsel in its remand motion (which is unsupported by

---

[11] The Department relies on *In re Clean Water Act Rulemaking*, 568 F. Supp. 3d 1013 (N.D. Cal. 2021) to support its argument that "courts generally grant motions for a voluntary remand." Dkt. No. 73 at 9. However, the district court's remand order was reversed by the Ninth Circuit "in its entirety" for "reconsideration of the EPA's remand motion." *In re Clean Water Act Rulemaking*, 60 F.4th at 596.

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

any declarations of the Department itself[12]), the Department has consistently represented to this court that the Duwamish would be denied federal recognition under the 2015 Regulations. AR 34; Dkt. No. 46 at 8, 10 (Defs.' Supp. Br.). In the FDR, for example, the Department found that the Duwamish is "not a continuation of the D'Wamish and other allied tribes" and "did not provide sufficient evidence of community or political influence and authority at any time, even after it formed in 1925." AR 34. The Department went on to conclude that the Tribe "would still face these fundamental problems" under the 2015 Regulations. *Id.*

Throughout this litigation, the Department has reaffirmed that "both of these findings [in the FDR] would result in a negative finding under not only the 1978 and 1994 regulations *but also the 2015 regulations*." Dkt. No. 46 at 8 (emphasis added); *see also id.* at 10. Because the Department has declined to reconsider the Duwamish petition under its current regulations and has expressly predetermined the outcome if it were to apply them, this "is reason enough to deny [its] voluntary remand [request]." *In re Clean Water Act Rulemaking*, 60 F.4th at 596; *see also, e.g.*, *FEC v. Legi-Tech., Inc.*, 75 F.3d 704, 708–09 (D.C. Cir. 1996) ("[R]emand to the agency is an unnecessary formality where the outcome is clear." (citing *Am. Fed'n of Gov't Emps. v. Fed. Lab. Rels. Auth.*, 778 F.2d 850, 862 n.19 (D.C. Cir. 1985)); *A.L. Pharma, Inc. v. Shalala*, 62 F.3d 1484, 1489 (D.C. Cir. 1995) (noting that remand is futile and unnecessary "where '[t]here is not the slightest uncertainty as to the outcome of a[n] [agency] proceeding'" (citation omitted)).

In filing this Motion, the Department does not confess any error in failing to apply the 2015

---

[12] *See Assiniboine & Sioux Tribes*, 527 F. Supp. at 135–36 (denying agency's request for remand because agency's justification did not constitute "substantial and legitimate" grounds where agency submitted a declaration in support of remand motion identifying "several factors the agency will consider in developing its accounting plan" but where the agency's "obligation to create tribal accounting plans ha[d] been evident for years").

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

Regulations (or ignoring key evidence in the record). *See* Dkt. No. 73 at 7, 9; *see also Pac. Coast Fed'n of Fishermen's Assocs. v. Raimondo*, No. 1:20-cv-00426-DAD-EPG, 2022 WL 789122, at *11 (E.D. Cal. Mar. 11, 2022) ("[C]ourts have refused to grant remand where the agency's position does not demonstrate a commitment to a changed approach."). The agency also does not give any clear indication of how it will proceed on remand. *See Ctr. for Biological Diversity v. Haaland*, 641 F. Supp. 3d 835, 841–42 (N.D. Cal. 2022) (remanding after "presidential administration signaled that it would reevaluate the [challenged] 2019 ESA Rules and rescind many of them"). The Department provides only blanket speculation that it "*might* lead the Department to make a different determination on acknowledgment" and that "is *willing* to commit to a changed approach." Dkt. No. 73 at 10–11 (internal quotation marks and citation omitted) (emphasis added). If the Department's repeated actions over the past decade are any indication, the agency's request to reconsider the Duwamish petition is likely nothing more than an attempt to "write a better decision for [its] predetermined outcome." *Keltner*, 148 Fed. Cl. at 565; *Limnia*, 857 F.3d at 388 (reversing district court's "voluntary remand order [that] was a 'remand' in name only"). The Court should not afford the Department a *third* bite at the apple. *See Am. Waterways Operators*, 427 F. Supp. 3d at 98, 100 (denying agency a "second bite at the apple" where agency sought to revisit an "otherwise final decision based solely on its new-found desire" to purportedly "reconsider" certain factors that had already been considered years prior to litigation). Instead, this Court should deny remand where it is clear the Department's outcome is predetermined.

### 2. The Tribe will suffer undue prejudice if this case is remanded.

The Tribe will be unduly prejudiced if this case is remanded to the Department before the Tribe's claims are heard on the merits. Not only will the Tribe be unable to challenge the validity

PLS.' OPP. TO DEFS.' MOT. TO REMAND

Case No. 22-cv-00633-JNW

- 18 -

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

of the 2015 Regulations (as applied to the Duwamish) on remand, a remand at this late stage will only delay resolution of the Tribe's petition by several years—meaning the Tribe's petition could be pending more than *50 years* before it gets a final decision restoring the Tribe's status as a federally recognized tribe.

       *i.    A remand would not provide the Tribe with the relief it seeks.*

The Department maintains that even if the Tribe prevails on its claims, "the only relief to which [it is] entitled under the APA is remand to the agency for further consideration." Dkt. No. 73 at 11. This is incorrect.

As Section III(A) explains, in bringing Claims I and II, the Tribe seeks a judicial declaration that it is a previously recognized tribe and an order compelling the Department to place the Tribe on the agency's list of federally recognized tribe. *See* Dkt. No. 2 at ¶¶ 95, 105, 142–43 (Am. Compl.). That is, if the Tribe prevails on Claims I and II, the Tribe would not be required to wait up to another decade for the Department to reconsider the Tribe's petition under the 2015 Regulations in order to restore its rights as a previously recognized tribe.

Critically, even if the Department were to apply the 2015 Regulations on remand, the agency cannot resolve the Tribe's challenges to the 2015 Regulations themselves as unlawful under the List Act, 25 U.S.C. § 5130 *et seq.* The List Act expressly provides that *Congress*, not the Department, enjoys plenary power over Indian Affairs, including the exclusive power to terminate a tribe's status as a previously recognized tribe. *See* Pub. L. No. 103-454, § 103(1), (3)–(5) (codified at 25 U.S.C. § 5130 notes). But the Department's 2015 Regulations allow the *Department* to terminate a tribe's status as an Indigenous tribe, even one that was *previously recognized by Congress*, like the Duwamish. *See* 25 C.F.R. § 83.12. The 2015 Regulations

PLS.' OPP. TO DEFS.' MOT. TO REMAND

Case No. 22-cv-00633-JNW

- 19 -

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

therefore permit the agency to usurp Congress's *sole* power to terminate the prior federal recognition of a tribe. *Id.*

Because the Tribe asks this court to review the legality of the 2015 Regulations themselves, it would be improper for the agency to reconsider the Tribe's petition under regulations that the Tribe maintains are unlawful. Thus, the Department's claim that a remand avoids current review by this court is simply incorrect.

>   ii.   *A remand could delay this proceeding by up to another decade.*

Further, delaying this action another decade—so that the Department may again review the Tribe's petition under the 2015 Regulations—will unduly prejudice the Tribe and its members and delay their day in Court. The Duwamish Tribe has sought federal acknowledgment from the Department since 1977. AR 36. The Department has taken 14 years and over 6 years the two prior times it has considered the Duwamish petition. *See supra* Section II.

In *Keltner*, the court found prejudice "in the total absence of any meaningful justification for a remand . . . and the attendant further delay that would result"; there, the court concluded the government's "remand request [was] quite difficult to fathom" and denied the request. 148 Fed. Cl. at 566–67. Likewise, in *Assiniboine & Sioux Tribes*, the court found prejudice where the "department ha[d] been on notice of [the petitioner's] concerns for decades," and it had known about the "intervening events" before that suit was filed; in that case, the court concluded that any further delay "would be inappropriate" and, again, denied the request. 527 F. Supp. 2d at 136.

Here, just as in *Keltner* and *Assiniboine & Sioux Tribes*, the Department has failed to provide a meaningful justification for remand; the Department has been on notice that the Duwamish Tribe was entitled to review under the 2015 Regulations for nearly a decade; the

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

Department has been on notice of the two cases it now deems as "intervening events" (*Chinook* and *Burt Lake*) for nearly four years (both of which were decided two years before this case was even filed); and any further delay of the Tribe's petition—up to a decade of additional agency review—would mean that the Tribe's petition could be pending more than *50 years* before it gets a final decision restoring the Tribe's status as a federally recognized tribe. This excessive delay of justice would be highly inappropriate and "difficult to fathom." *Keltner*, 148 Fed. Cl. at 566–67; *see Assiniboine & Sioux Tribes*, 527 F. Supp. 2d at 136.

Relatedly, the Department cannot now claim in good faith that remand will promote "judicial economy" where the Department has already forecasted the "negative" result under the 2015 Regulations. Dkt. No. 46 at 8, 10; *Borrome v. Attorney General of U.S.*, 687 F.3d 150, 156 n.4 (3d Cir. 2012) ("The [agency] had the opportunity to consider the issues . . . [but] chose not to do so."). If the Department denies the Duwamish petition for a third time, as it has already represented it would do, the remand will inevitably result in "piecemeal litigation . . . for years to come." *Am. Waterways Operators*, 507 F. Supp. 3d at 58. The Department's inexplicable delays and the timing of this request weigh in favor of denying the Department's request for remand.

These delays have real consequences for the Tribe. For every year of delay, Duwamish tribal members struggle without the critical federal resources necessary to support their health and wellbeing. The Duwamish Tribal Council has passed a resolution opposing remand and urging judicial review of their claim for recognition. Hansen Decl., Ex. A; *see* Hansen Decl., ¶ 9; Rasmussen Decl., ¶ 14. Duwamish members are denied a voice in state-mandated tribal education, Nelson Decl., ¶ 12, and "government-to-government relationships with the federal government, state and local governments, and other federally recognized tribes." Hansen Decl., ¶ 9.

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON  98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

The lack of federal recognition also results in a lack of control over the Tribe's historical sites and cultural artifacts. *Id* at ¶¶ 10–12. Cecile Hansen, Chairwoman of the Duwamish Tribal Council, has protested various Port of Seattle development projects taking place on historic Duwamish village sites, including near həʔapus Village Park where "historic artifacts were found by the Duwamish Tribe and US Army Corps of Engineers representatives" in 1977. Neufeld Decl., Ex. 4; Hansen Decl., ¶ 11. The Tribe sought to build its longhouse on the site, but "the Port refused [its] request to build [its] longhouse at this site." Hansen Decl., ¶ 10. In another painful incident, "cultural artifacts of the Duwamish Tribe related to waterfront village sites" held in the Duwamish Longhouse and Cultural Center were removed and transferred to federally recognized tribes in 2013. *Id.* at ¶ 12. This was devastating for the Tribe and its members that relied on these artifacts as both a connection to their ancestors and a tool for educating the community about the Duwamish people. *See id.*

The longer that the Tribe goes unrecognized by the Department, "the memory of the Duwamish Tribe" will continue to be "*erased from society*." Workman Decl., ¶ 14 (emphasis added). James Rasmussen, a Duwamish Tribal Councilmember, summarizes the pain felt by the Duwamish people:

> My mother is dead. And federal recognition was very important to her. I truly wanted to see the Tribe recognized before she passed away, but she is gone. And within the Tribe, we have many people who are dead or close to death that have worked hard for this. ***But how many generations have to pass before we realize what was promised to us?***

Rasmussen Decl., ¶ 15 (emphasis added).

## IV.    CONCLUSION

The Duwamish Tribe respectfully asks the Court to deny the Department's remand motion

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON  98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

because it fails to set forth a substantial and legitimate basis for remand and is highly prejudicial to the Duwamish Tribe. At a minimum, the Court should resolve the merits of the Tribe's Claims I and II for declaratory and mandamus relief. If the Tribe prevails on those claims, the remaining claims are moot and no remand is necessary. Claims III–V can be addressed, if necessary, after this Court has provided specific instruction to the Department regarding the Tribe's equal protection claim as well as how the 2015 Regulations address the prior recognition of the Duwamish Tribe.

DATED this 22nd day of January, 2024.


Respectfully Submitted,

K&L GATES LLP


By:   s/ Bart J. Freedman
        Bart J. Freedman, WSBA # 14187
        Theodore J. Angelis, WSBA # 30300
        J. Timothy Hobbs, WSBA # 42665
        Benjamin A. Mayer, WSBA # 45700
        Endre M. Szalay, WSBA # 53898
        Shelby R. Stoner, WSBA # 52837
        Natalie J. Reid, WSBA # 55745
        Courtney A. Neufeld, WSBA # 60154
        Isabella C. Forcino, WSBA # 61346

        925 Fourth Avenue, Suite 2900
        Seattle, Washington 98104-1158
        Tel: +1 206 623 7580
        Fax: +1 206 623 7022
        Emails: bart.freedman@klgates.com
        theo.angelis@klgates.com
        tim.hobbs@klgates.com
        ben.mayer@klgates.com

PLS.' OPP. TO DEFS.' MOT. TO REMAND

Case No. 22-cv-00633-JNW

- 23 -

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

endre.szalay@klgates.com
shelby.stoner@klgates.com
natalie.reid@klgates.com
courtney.neufeld@klgates.com
isabella.forcino@klgates.com

*Attorneys for Plaintiffs*

*I certify that this memorandum contains 7,608 words in compliance with the Local Civil Rules.*

PLS.' OPP. TO DEFS.' MOT. TO REMAND

Case No. 22-cv-00633-JNW

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022