UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THE DUWAMISH TRIBE and CECILE
HANSEN, in her capacity as the
Chairwoman of the Duwamish Tribal
Council,

               Plaintiffs,

     v.

DEB HAALAND, U.S. Secretary of the
Interior, BRYAN NEWLAND, Assistant
Secretary of Indian Affairs, U.S.
DEPARTMENT OF THE INTERIOR,
BUREAU OF INDIAN AFFAIRS,
OFFICE OF FEDERAL
ACKNOWLEDGMENT, UNITED
STATES OF AMERICA,

               Defendants.

CASE NO. 2:22-cv-633-JNW

ORDER

## 1. INTRODUCTION

For nearly 50 years, Plaintiffs have sought federal recognition as an Indian Tribe under Part 83 of Title 25 of the Code of Federal Regulations, 25 C.F.R. Part 83 ("Part 83"), which lays out the process for recognition. Defendant United States Department of the Interior ("Department") declined to acknowledge Plaintiffs under older versions of Part 83 because Plaintiffs did not meet all the

1
2
3
4
5
6
7
8

criteria for recognition. So Plaintiffs sued the Department, challenging its ultimate decision and alleging, among other things, that the Department violated Plaintiffs' equal protection and due process rights by refusing to consider their petition under the most recent version of Part 83—the "2015 regulations." Dkt. No. 2 ¶¶ 134–135. Now, without admitting error, the Department moves for voluntary remand to consider Plaintiffs' petition under the 2015 regulations. Dkt. No. 73. But Plaintiffs say that further administrative proceedings are a waste of time and would only lead to another denial of recognition. The Court disagrees.

9
10
11
12
13
14
15
16
17

Plaintiffs have repeatedly requested the Department consider their petition under the 2015 regulations, arguing that doing so would lead to recognition. The Department now wishes to do just that—"in good faith, and [with] no predetermined outcome"—while allowing Plaintiffs to submit new evidence in support of their petition. Dkt. No. 86 at 10. True, the Department stops short of promising a "positive determination on remand," but there is no evidence that its remand request is an empty gesture or made in bad faith. Dkt. No. 86 at 10. And the Department's commitment to a changed approach on remand presents a real possibility of a different outcome. This is enough to justify remand.

18
19
20

As a result, the Court REMANDS this matter to the Department to consider Plaintiffs' petition, and any new supporting evidence, under the 2015 regulations. The Court DENIES the other remaining motions, Dkt. Nos. 55 and 85.

21
22
23

1

## 2.  BACKGROUND

2

3    This case has a long factual and procedural history, and many parts of the

record are in dispute. The Court does not provide a comprehensive history of the

4    case here, but instead recounts the background relevant to the question of remand.

5

### 2.1  The Federal acknowledgment process generally.

6

7    Tribes who are "acknowledged" by the federal government enjoy rights and

privileges unavailable to other indigenous groups. *Kahawaiolaa v. Norton*, 386 F.3d

8    1271, 1273 (9th Cir. 2004) ("Federal recognition affords important rights and

9    protections to Indian tribes, including limited sovereign immunity, powers of self-

10   government, the right to control the lands held in trust for them by the federal

11   government, and the right to apply for a number of federal services."). Historically,

12   "the federal government recognized American Indian Tribes on a case-by-case

13   basis." *Id.* Then, "[i]n 1978, [the Department] promulgated regulations establishing

14   a uniform procedure for 'acknowledging' American Indian Tribes[.]" *Agua Caliente*

15   *Tribe of Cupeño Indians of Pala Rsrv. v. Sweeney*, 932 F.3d 1207, 1214 (9th Cir.

16   2019) (citing *Kahawaiolaa*, 386 F.3d at 1273; 25 U.S.C. § 9). These regulations are

17   known as Part 83, or the Part 83 process. Under the original Part 83 process,

18   petitioning tribes had to meet seven criteria:

19        (a) the group has been identified as an American Indian entity on a
         substantially continuous basis from historical times to the present, (b) a
20        substantial portion of the group inhabits a distinct area or lives in a
         community viewed as American Indian and distinct from other
21        populations in the area, (c) the group has maintained tribal political
         influence or other authority over its members as an autonomous entity
22        from historical times until the present, (d) the group has a governing
         document, (e) the group's membership is composed of individuals who
23

descend from a historical Indian tribe, (f) the group's membership is composed of persons who are not members of an acknowledged tribe, and (g) the group's status as a tribe has not been terminated or otherwise precluded by congressional legislation.

*Hansen v. Salazar*, No. C08-0717-JCC, 2013 WL 1192607, at *1 (W.D. Wash. Mar. 22, 2013) (citing 25 C.F.R. § 83.7 (1982)). Department historians and anthropologists review each petition to determine whether it meets the requisite Part 83 criteria. *Kahawaiolaa*, 386 F.3d at 1274.

The Department revised the Part 83 process in 1994. *See* Procedures for Establishing that an American Indian Group Exists as an Indian Tribe, 59 Fed. Reg. 9280 (Feb. 25, 1994) (codified at 25 C.F.R. § 83). The procedures for processing a petition were substantially the same under the original and 1994 regulations. *Hansen*, 2013 WL 1192607, at *2. But the 1994 regulations also permitted "petitioners who present 'substantial evidence of unambiguous [f]ederal acknowledgment' to proceed under a modified set of criteria" under 25 C.F.R. § 83.8. *Id.*

The Department revised the regulations again in 2015. *See* Federal Acknowledgment of American Indian Tribes, 80 Fed. Reg. 37,862 (July 1, 2015) (codified at 25 C.F.R. pt. 83). The 2015 regulations maintained the same basic criteria, but ushered in several changes regarding the types of acceptable evidence. For example, while the 1994 regulations required identification as an Indian tribe by external sources, the 2015 regulations allow petitioners to rely on evidence of "[i]dentification as an Indian entity by the petitioner itself." *Compare* 25 C.F.R. § 83.7(a)(1)-(6) (1994) *with* 25 C.F.R. § 83.11(a)(1)-(7) (2015). And while the 1994

regulations considered "community" based "[s]ignificant rates of marriage within the group, and/or, as may be culturally required, patterned out-marriages with other Indian populations[,]" the 2015 regulations permit evidence of "community" through "[r]ates or patterns of known marriages within the entity, or, as may be culturally required, known pattered out-marriages." *Compare* 25 C.F.R. § 83.7(b)(1)(i) (1994) *with* 25 C.F.R. § 83.11(b)(1)(i) (2015). This change removes the requirement that a petitioner must show evidence of patterned out-marriages with other Indian populations, and consequently, allows a petitioner to present evidence of their ancestors' patterned out-marriages with Indian and non-Indian groups. *See* Dkt. No. 2 ¶ 111. These changes and others are relevant here and discussed below.

According to the Department, the 2015 regulations rectified prior shortcomings in the Part 83 process by promoting a consistent baseline for criteria and specifying the types of evidence needed to satisfy them. Highlights of the Final Federal Acknowledgment Rule (25 C.F.R. 83), Assistant Secretary – Indian Affairs (June 29, 2015), available at https://www.bia.gov/sites/default/files/dup/assets/as-ia/pdf/idc1-030769.pdf.

## 2.2 The historic Duwamish tribe and Plaintiffs' federal acknowledgment efforts.

There is no dispute that the historic Duwamish tribe lived on the lands that make up present-day Seattle and the surrounding areas "along the Black, Cedar, and Duwamish Rivers." Dkt. Nos. 2 ¶ 12; 13 ¶ 12. In the mid-nineteenth century, the United States government "negotiated a series of treaties with the tribes of the Puget Sound region" under which "the tribes ceded to the United States nearly all of

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

their territory in Western Washington." *Hansen*, 2013 WL 1192607, at *5. These treaties established "reservations in the Puget Sound region, including those that are known as the Lummi Reservation, the Tulalip Reservation, the Muckleshoot Reservation, the Port Madison Reservation, and the Puyallup Reservation." *Id.* In 1855, Chief Seattle signed the Treaty of Point Elliott on behalf of his mother's and father's tribes, the historic Duwamish Tribe and the Suquamish Tribe. Dkt. Nos. 2 ¶ 1; 13 ¶ 1.

Plaintiffs allege that they "are direct descendants of the members of the Duwamish Tribe as it existed when Chief Seattle signed the Treaty [of Point Elliott]." Dkt. No. 2 ¶ 6. So they submitted a petition for federal acknowledgment in November 1987 and a revised petition in 1989. Dkt. No. 76-3 at 13. Over a decade later, on January 19, 2001, then-Acting Assistant Secretary of Indian Affairs Michael Anderson drafted a Final Determination acknowledging that the "Duwamish[ ] exists as an Indian tribe within the meaning of Federal law." Dkt. No. 76-7 at 2. But before the decision became effective, there was a change in administration. Dkt. No. 76-3 at 15. Under the new administration, Assistant Secretary for Indian Affairs Neal McCaleb signed a Final Determination on September 25, 2001, *declining* to acknowledge Plaintiffs. *Id.* at 15–16. The Final Determination found that Plaintiffs failed to submit sufficient evidence to meet the first three criteria under the 1978 version of the federal acknowledgment regulations. *Id.* at 15. After a failed petition for reconsideration, the 2001 Final Determination became effective on May 8, 2002. *Id.* at 16.

1    Eventually, Plaintiffs challenged the 2001 Final Determination in district

2    court. *See Hansen*, 2013 WL 1192607, at *1. On March 22, 2013, the Honorable

3    John C. Coughenor vacated the Department's Final Determination declining to

4    acknowledge Plaintiffs, and he remanded the matter to the Department to "either

5    consider [Plaintiffs'] petition under the 1994 acknowledgement regulations or

6    explain why it declines to do so." *Id.* at *11.

7    While considering the petition on remand, the Department proposed new

8    acknowledgment regulations. 79 Fed. Reg. 30,766 (May 29, 2014) (setting forth the

9    proposed rule for Federal Acknowledgment of American Indian Tribes). On July 1,

10    2015, the Department promulgated the final rule, effective July 31, 2015 (i.e., the

11    2015 regulations discussed above). 80 Fed. Reg. 37,862 (July 1, 2015). Plaintiffs sent

12    letters to the Department requesting that it consider their petition under the 2015

13    regulations, but the Department declined to do so. Dkt. Nos. 76-1, 76-2. On July 24,

14    2015, the Department issued its Final Decision on Remand ("FDR"). Dkt. No. 76-3.

15    The FDR contained two procedural determinations that are relevant here.

16    First, the Department refused to re-open the record on remand, finding that

17    "[s]ubmission of new or additional evidence by [Plaintiffs] following a final and

18    effective final determination is tantamount to re-petitioning and therefore cannot be

19    accepted." *Id.* at 10. Second, the Department refused to consider Plaintiffs' petition

20    under the 2015 regulations because Plaintiffs' petition was the only petition

21    considered on remand, and Department "resources [were] better allocated to

22    petitioners who have yet to receive a final agency decision." *Id.* at 11. The FDR also

23    noted that "fundamental problems" with Plaintiffs' petition would persist even if

evaluated under the 2015 regulations, explaining, Plaintiffs "formed in 1925 and [are] not a continuation of the D'Wamish and other allied tribes" and "did not provide sufficient evidence of community or political influence and authority at any time, even after [they] formed in 1925." *Id.*

So on remand, the Department reevaluated the petition under the 1978 and 1994 regulations only. *Id.* at 9. On the merits of the petition, the Department found that Plaintiffs could not procced under 25 C.F.R. § 83.8 (1994), as they lacked substantial evidence of unambiguous federal acknowledgment. *Id.* at 20. The Department also found that Plaintiffs failed to meet the criteria under 25 C.F.R. § 83.7(a), (b), (c) (1994).[1] *Id.* at 25–26. In summarizing its conclusions, the Department stated that Plaintiffs' evidence was not sufficient to show "that external observers identified [Plaintiffs] as an Indian entity from 1900 to the present on a substantially continuous basis," that Plaintiffs have "existed as a community from historical times until present," and that Plaintiffs maintained political authority or influence. *Id.* at 17, 25–26.

## 2.3    The present litigation.

Plaintiffs filed this lawsuit on May 11, 2019, seeking several forms of relief. First, Plaintiffs seek a declaratory judgment that they "ha[ve] been recognized by Congress and other federal authorities as an Indian tribe within the meaning of the List Act [25 U.S.C. § 5130 *et seq.*] and as the successor in interest to the Tribe that

---

[1] Plaintiffs met the criteria under 25 C.F.R. § 83.7(d), 83.7(e), 83.7(f), and 83.7(g). Dkt. No. 76-3 at 26.

signed the Treaty of Point Elliott." Dkt. No. 2 ¶ 95. Second, Plaintiffs ask the Court for mandamus relief under Sections 703 and 706(1) of the Administrative Procedure Act (APA)—compelling Defendants to place Plaintiffs on the list of federally recognized tribes. *Id.* ¶ 105. Alternatively, Plaintiffs request that the Court "hold unlawful and set aside" the FDR and remand to the Department with instructions to reconsider their petition under the 2015 regulations and to grant Plaintiffs a formal on-the-record hearing before an Administrative Law Judge. *Id.* ¶¶ 145–146.

Finally, Plaintiffs allege that, in assessing whether their petition satisfied the "community" criterion, the Department failed to acknowledge community ties based on "patterned 'out marriages' (i.e., marriages outside the tribe) of the Duwamish members' female ancestors because those marriages were not 'with other Indian populations.'" *Id.* ¶ 110. The 2015 regulations, unlike the 1994 regulations, allow evidence of "patterned out-marriages" with non-Indian groups. *Id.* ¶ 111; *see supra* § 2.1 (*comparing* 25 § C.F.R. 83.7(b)(1)(i) (1994) *with* 25 C.F.R. § 83.11(b)(1)(i) (2015)). Because the Department applied the 1994 regulations, it disregarded evidence of Plaintiffs' female ancestors' "patterned out marriages, or so-called 'pioneer marriages,'" with non-Indian men, and as a result, discriminated against Plaintiffs as a matrilineal tribe. Dkt. No. 2 ¶ 135. As alternative relief, Plaintiffs seek "a judicial declaration under 5 U.S.C. § 703 that Defendants' differential treatment of [Plaintiffs] based on the sex of [their] ancestors violates [Plaintiffs'] equal protection rights and absent such differential treatment, [Plaintiffs] would satisfy" all criteria of the Part 83 regulations. *Id.* ¶¶ 119–20.

# 3.  DISCUSSION

## 3.1    Voluntary remand.

"A federal agency may request remand in order to reconsider its initial action." *Cal. Cmtys. Against Toxics v. U.S. E.P.A.*, 688 F.3d 989, 992 (9th Cir. 2012) (citing *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001)). The scenarios in which an agency might request remand typically fall into three types: (1) "the agency may seek a remand to reconsider its decision because of intervening events outside of the agency's control"; (2) "even in the absence of intervening events, the agency may request a remand, without confessing error, to reconsider its previous position"; and (3) "the agency may request a remand because it believes that its original decision was incorrect on the merits and it wishes to change the result." *SKF USA*, 254 F.3d at 1029; *Keltner v. United States*, 148 Fed. Cl. 552, 561 (2020) ("*SKF USA* is by far the leading authority on the law of voluntary remands.").

Courts possess "broad discretion" in deciding whether to grant a voluntarily remand. *Nat. Res. Def. Council v. U.S. Env't Prot. Agency*, 38 F.4th 34, 60 (9th Cir. 2022). The remand request's typology guides the court's discretion. Courts generally grant an agency's request for voluntary remand when the agency seeks to cure its own mistakes. *Id.* Likewise, "'[i]ntervening events outside of the agency's control, for example, a new legal decision or the passage of new legislation,' counsel in favor of granting such a remand request." *Id.* (quoting *SKF USA,* 254 F.3d at 1028). When an agency seeks remand without admitting error, however, the court should "subjec[t] the government's position to careful analysis to ensure that the [voluntary

remand] motion is properly supported and justified." *Rahman v. United States*, 149
Fed. Cl. 685, 690 (2020).

The Department argues that its request falls under the first voluntary
remand category—intervening events outside the agency's control—pointing to the
district court decisions in *Chinook Indian Nation v. Bernhardt*, No. 17-cv-05668-
RBL, 2020 WL 128563 (W.D. Wash. Jan. 10, 2020), and *Burt Lake Band of Ottawa
& Chippewa Indians v. Bernhardt*, 613 F. Supp. 3d 371 (D.D.C. 2020). Dkt. No. 73
at 8. The 2015 regulations maintained the previous versions' ban against re-
petitioning for federal recognition after the Department issues an adverse decision.
*See* 25 C.F.R. § 83.4(d) (the Department will not acknowledge "[a]n entity that
previously petitioned and was denied Federal acknowledgement under these
regulations or under previous regulations in part 83[.]"). In *Chinook* and *Burt Lake*,
the petitioning tribes challenged the inclusion of this rule in the 2015 regulations.
In both cases, the district court found the Department's decision to maintain the
ban against re-petitioning to be arbitrary and capricious, remanding the rule to the
Department for further consideration. *Chinook,* 2020 WL 128563, at *10, *on
reconsideration on other grounds,* No. 3:17-CV-05668-RBL, 2020 WL 618465 (W.D.
Wash. Feb. 10, 2020); *Burt Lake Band*, 613 F. Supp. 3d at 386.

But Plaintiffs do not challenge the failure of the 2015 regulations to provide
for re-petitioning—they challenge the Department's decision to deny them
recognition. Thus, neither *Chinook* nor *Burt Lake* addressed the actual question
presented here about whether the FRD was reached in error. And beyond its
decision to allow for something "tantamount" to re-petitioning, Dkt. No. 73 at 8, the

1    Department does not explain how either case would affect its determination on

2    remand. Moreover, neither case—both decided over four years ago—has resulted in

3    the Department enacting a new regulation that accepts previously denied petitions.

4    That the Department has maintained the status quo even after these rulings

5    undercuts its argument that the rulings have legal bearing upon its treatment of

6    Plaintiffs' petition. So standing alone, the Court does not view *Chinook* and *Burt*

7    *Lake* as intervening events that justify remand.

8        In the alternative, the Department argues that its request falls under the

9    second voluntary remand type—it wishes to reconsider the FDR without confessing

10   error.[2] This category is the best fit for the Department's request, so the Court turns

11   its attention to whether remand is warranted under these circumstances.

### 3.1.1    The Department's offer to reconsider Plaintiffs' petition under the 2015 regulations is substantial and legitimate.

13       Reviewing courts have discretion over whether to remand when an agency

14   requests remand without confessing error. "A remand may be refused if the agency's

15   request is frivolous or in bad faith." *SKF*, 254 F.3d at 1029. But when an "agency's

16   concern is substantial and legitimate, a remand is usually appropriate." *Sound*

17   *Action v. United States Army Corps of Engineers*, No. C18-0733JLR, 2019 WL

18   5617571, at *4 (W.D. Wash. Oct. 30, 2019) (quoting *SKF USA*, 254 F.3d at 1029).

19   "[A]n agency need not confess error or impropriety" to prevail on a motion for

20   remand in this scenario, but it "does at least need to profess intention to reconsider,

---

[2] The Department does not argue that its request fits within the third voluntary remand type (i.e., the agency requests a remand because it believes that its original decision was in error).

1  re-review, or modify the original agency decision that is the subject of the legal

2  challenge." *Limnia, Inc. v. United States Dep't of Energy*, 857 F.3d 379, 387 (D.C.

3  Cir. 2017) (Kavanaugh, J.).

4        Without confessing error, the Department requests remand to consider

5  Plaintiffs' petition under the 2015 regulations. It also promises to allow Plaintiffs to

6  supplement their evidence if remand is granted. The Department says that this

7  change of heart is owed to the decisions in *Chinook* and *Burt Lake,* which caused it

8  to "question" its previous position that "acknowledgment denied under the 1978 and

9  1994 regulations would also be denied if assessed under the 2015 regulations," as it

10  found in the FDR, particularly given that it will reopen the record and allow

11  Plaintiffs to submit new evidence. Dkt. No. 73 at 10–11 As a result of this

12  questioning, the Department now has "substantial and legitimate concerns" about

13  portions of the FDR, i.e., its decision to not apply the 2015 regulations and to not

14  reopen the record. *Id.* at 10. When agencies express "doubts about the correctness of

15  its decision or that decision's relationship to the agency's other policies," remand is

16  typically warranted. *SFK*, 254 F.3d at 1029. Remand is also warranted when the

17  agency requests remand to consider new information, as is the case here. *See*

18  *Neighbors Against Bison Slaughter v. Nat'l Park Serv.,* No. CV 19-128-BLG-SPW,

19  2021 WL 717094, at *2 (D. Mont. Feb. 5, 2021). These reasons constitute substantial

20  and legitimate concerns supporting remand.

21        Even so, Plaintiffs argue against remand, claiming the Department does not

22  intend to genuinely reconsider their petition. Dkt. No. 75 at 20–21. To be sure,

23  courts have refused to grant remand where an agency does not demonstrate a

commitment to a changed approach or where there's an air of bad faith. *See Keltner*, 148 Fed. at 565 (denying remand where remand was sought to "write a better decision for a predetermined outcome"); *Limnia*, 857 F.3d at 388 (district court erred by granting voluntary remand when agency had no intention of revisiting the original application decisions under judicial review, but offered instead to review any new applications company chose to submit; thus, the "District Court's voluntary remand order was a 'remand' in name only."); *Lutheran Church-Missouri Synod v. F.C.C.*, 141 F.3d 344, 349 (D.C. Cir. 1998) (denying remand when the request was based on a non-binding "post-argument policy statement," when the agency could not promise any outcome on remand, and when the court determined that the agency was merely employing "novel" and "unusual" tactics to avoid judicial review). But here, the Department has expressed an intent to "reconsider, re-review," and possibly "modify" its original decision that is the subject of this challenge, *Limnia*, 857 F.3d at 388, and there are no indicia that the Department makes the request for remand in bad faith.

Plaintiffs also argue that remand would be futile because the outcome is preordained *against* recognition. In support, they cite the portion of the FDR stating that "fundamental problems" with their petition would persist even if evaluated under the 2015 regulations; specifically, that Plaintiffs "formed in 1925 and [are] not a continuation of the D'Wamish and other allied tribes" and failed to "provide sufficient evidence of community or political influence and authority at any time, even after it formed in 1925." Dkt. No. 75 at 22 (citing Dkt. No. 76-3 at 11).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

The Court disagrees that remand would be futile. First, Plaintiffs will have an opportunity to supplement the record on remand—thus, the Department will need to reevaluate its factual conclusions, including its conclusion about whether Plaintiffs embody a continuation of the historic Duwamish tribe. Second, the 2015 regulations have changed the recognition criteria in petitioner-friendly ways that may benefit Plaintiffs even if the Department ultimately concludes that they are not successors-in-interest of the signatories to the Point Elliott Treaty of 1855. Criterion (a) under the 1994 regulations required external identification as an Indian tribe, but criterion (a) under the 2015 regulations allows petitioners to rely on evidence of self-identification as an Indian tribe. *Compare* 25 C.F.R. § 83.7(a) (1994) *with* 25 C.F.R. § 83.11(a)(7) (2015). In addition, criteria (b) and (c) of the 1994 regulations required evidence of community and political authority from "historic times until the present," while the 2015 regulations require evidence only from 1900 until present. *Compare* 25 C.F.R. § 83.7(b)-(c) (1994) *with* 25 C.F.R. § 83.11(b)-(c) (2015).

The 2015 regulations also address one of Plaintiffs' core complaints about the 1994 regulations—criterion (b) in the 2015 regulations allows evidence of "patterned out-marriages" with other Indian *and* non-Indian groups. *Compare* § 83.11(b)(1)(i) (2015) with § 83.7(b)(1)(i) (1994). Plaintiffs allege that because the FDR applied the 1994 regulations, the Department disregarded or undervalued "patterned out-marriages" with non-Indian groups, and as a result, discriminated against Plaintiffs as a matrilineal tribe. Dkt. No. 2 ¶ 135. Reconsideration under the 2015 regulations will allow the Department to remedy this alleged discriminatory standard.

1    In *Hansen*, Judge Coughenour faced a similar situation. The Department

2  failed to consider Plaintiffs' petition under the 1994 regulations and instead applied

3  only the 1978 regulations. 2013 WL 1192607, *5. The Department "consistently

4  maintained that the final determination on a particular petition would be the same

5  regardless of whether the petition was evaluated under the 1978 or 1994

6  regulations." *Id.* at *2. Regardless, Judge Coughenour held that remand would not

7  be futile given that it was "at least possible that application of the 1994 regulations

8  would result in a different decision" and, even if it didn't, Plaintiffs would receive

9  "the benefit of a more transparent decision[-]making process." *Id.* at *9–10. This

10  Court reaches a similar conclusion—remand is not futile given the opportunity to

11  submit new evidence under the relatively favorable 2015 regulations.

12    **3.1.2    Any prejudice to Plaintiffs does not outweigh the utility of
             remand.**

14    "Remand should also be denied if it would . . . 'unduly prejudice the non-

15  moving party.'" *Rahman*, 149 Fed. Cl. at 689 (quoting *Util. Solid Waste Activities

16  Grp. v. Env't Prot. Agency*, 901 F.3d 414, 431 (D.C. Cir. 2018)). Plaintiffs argue they

17  will suffer undue prejudice if the Court grants remand, as remand could delay

18  resolution by up to a decade.[3] Dkt. No. 75 at 25–26. In response, the Department

19

20  _____

   [3] Plaintiffs also argue they would suffer prejudice because their suit challenges the
21  legality of the 2015 regulations, something that would be impossible to do before the
   agency on remand. Dkt. No. 75 at 24–25. But Plaintiffs' amended complaint does
22  not contain a cause of action challenging the validity of the 2015 regulations
   themselves—it does not ask the Court to set aside or find arbitrary and capricious
   any portion of the regulations. *See generally* Dkt. No. 2. Therefore, Plaintiffs'
23  argument mischaracterizes the nature of the amended complaint.

1  argues that remand would not cause delay because it is the only remedy available to

2  Plaintiff—in other words, remand now, rather than later, promotes efficiency. Dkt.

3  No. 86 at 8. According to the Department, the Court lacks authority to declare that

4  the Duwamish has been previously federally acknowledged or to order the

5  Department to place Plaintiff on the list of federally recognized tribes. *Id.*

6      The Department may have a point. For example, in *Agua Caliente Tribe*, 932

7  F.3d at 1216–18, the Cupeño Tribe asked the district court to compel the

8  Department to include the Cupeño as a federally acknowledged tribe under the List

9  Act, invoking (as Plaintiffs do here) the Mandamus Act, 28 U.S.C. § 1361, and APA,

10  5 U.S.C. § 706(1). The Ninth Circuit held that the Cupeño must complete the Part

11  83 process, even if the Cupeño claimed to have been previously recognized by the

12  federal government through treaties and other acts. *Id.* at 1219. Similarly, in

13  *Chinook Indian Nation v. Zinke*, No. 3:17-cv-5668-RBL, 326 F. Supp. 3d 1128,

14  1139–40 (2018), the district court held that "[a]bsent a clear delegation of authority

15  from Congress, the Court cannot bypass the existing federal acknowledgment

16  process and bestow federal recognition upon the [Chinook Indian Nation]." *See* 1

17  Cohen's Handbook of Federal Indian Law § 4.02 ("Since creation of the

18  administrative process, . . . many lower courts hearing claims bearing on federal

19  recognition have concluded that they must defer to that process.") (citing *Wyandot*

20  *Nation of Kan. v. United States*, 858 F.3d 1392 (Fed. Cir. 2017); *Mackinac Tribe v.*

21  *Jewell*, 829 F.3d 754, 757 (D.C. Cir. 2016)). This all suggests that remand is the

22  most likely outcome. As a result, a remand at this stage might produce a quicker

23

ultimate decision on the merits, making it an efficient means of resolution, all things considered.

That said, the Court draws no conclusion on this score but finds that delay alone does not constitute undue prejudice here. *See Friends of Animals v. Williams*, 628 F. Supp. 3d 71, 78 (D.D.C. 2022) ("[D]elay of potentially unnecessary litigation is not the sort of undue prejudice that defeats a request for voluntary remand."). The Court understands Plaintiffs' frustration with the extreme delays in this case. While Plaintiffs' concerns about further delay are justified, remand may present a quicker solution, particularly given the all-but-certain appeal that would follow if the Court were to order any mandamus relief. Remand is also consistent with the spirit of *SKF*, which suggests that an agency ought to receive an opportunity to correct its own mistakes. Given the importance of federal acknowledgment and the complicated factual and historical background presented here, this Court finds that reconsideration by the Department is the best path forward even if the way so far has been long and winding.

**3.2    The Court denies Plaintiffs' motion for leave to respond to the amicus briefs by the Muckleshoot and Tulalip Tribes.**

At the start of this lawsuit, the Court allowed the Muckleshoot and Tulalip Tribes to serve as amici curiae, permitting them to file amicus briefs responding to motions brought by the parties. Dkt. Nos. 26, 31. After the Department moved for voluntary remand and Plaintiffs objected, the Muckleshoot and Tulalip Tribes filed responses, also opposing remand but for different reasons. The Muckleshoot and Tulalip argue remand is "unwarranted" because *United States v. Washington*

1
2
3
4

("*Washington II*"), 476 F. Supp. 1101 (W.D. Wash 1979), *aff'd*, 641 F.2d 1368 (9th Cir. 1981), *cert. denied*, 454 U.S. 1143 (1982), conclusively decided that Plaintiffs are not the same entity as, or the successor-in-interest to, the historic Duwamish tribe that signed the Treaty of Point Elliott 1855. Dkt. Nos. 83 3-6; 84 at 2.

5
6
7
8
9
10
11

In *Washington II*, Plaintiffs and several other tribal groups asserted fishing rights as the successors-in-interest of the tribes or Indigenous groups who entered the Treaties of Medicine Creek and Point Elliott. The district court determined "[n]one of the five Intervenor entities [including Plaintiffs] . . . is at this time a political continuation of or political successor-in-interest to any of the tribes or bands of Indians with whom the United States treated in the treaties of Medicine Creek and Point Elliott." 476 F. Supp. at 1104.

12
13
14
15
16
17

As the Muckleshoot and Tulalip Tribes concede, however, the Ninth Circuit held that *Washington II* does not preclude groups from seeking recognition under the Part 83 process. Dkt. No. 83 at 6; *see also United States v. Washington*, 593 F.3d 790, 793 (9th Cir. 2010) (holding treaty rights and federal acknowledgment are separate inquiries). As a result, the Court is not swayed by the amici's rationale about why remand is unwarranted.

18
19
20
21
22

Plaintiffs object to the Muckleshoot and Tulalip Tribes' responses, arguing that they "raise new issues outside the scope of the parties' briefs" and were filed after Plaintiffs submitted their opposition. Dkt. No. 85 at 2. To cure, Plaintiffs ask the Court for leave to respond and to order that any future amicus briefing must follow Federal Rules of Appellate Procedure 29(a)(5)-(8).

23

The Court disagrees that the amicus briefs raised impermissible subject matter—whether Plaintiffs embody a continuation of the historic Duwamish tribe was central in all the briefing. Because the Muckleshoot and Tulalip Tribes also oppose remand—just on a different basis than Plaintiffs—the Court DENIES Plaintiffs' request for leave to submit another brief, also opposing remand. As the Court does not anticipate further amicus briefing, it also declines to order the Muckleshoot and Tulalip Tribes to follow the Federal Rules of Appellate Procedure.

### 3.3    Plaintiffs' motion to compel is moot.

Prior to Defendants' motion for voluntary remand, the Court was on track to complete its *in camera* review of Defendants' deliberative privilege documents, and order disclosure as it found appropriate. *See* Dkt. No. 71. But the procedural posture has changed. Because the Court finds remand warranted under the circumstances, it will no longer have jurisdiction over the dispute as the case is dismissed. As a result, it would be imprudent for the Court to make a ruling on a discovery matter that is moot. If the Department again decides against recognizing Plaintiffs as a federal tribe, and Plaintiffs seek judicial review, they may again move to compel documents withheld under the deliberative privilege doctrine.

## 4.    CONCLUSION

In sum, the Department's motion for voluntary remand is GRANTED and this matter is REMANDED to the Department of the Interior to re-open the record, accept new and supplemental evidence, and consider Plaintiffs' petition under the

2015 acknowledgment regulations. The remaining motions, Dkt. Nos. 55 and 85, are

DENIED. The Clerk is directed to close this case.

Dated this 30th day of January, 2025.

Jamal N. Whitehead
United States District Judge